MEMORANDUM FOR
PETITION UNDER 28 U.S.C. § 2254 FOR
WRIT OF HABEAS CORPUS BY A PERSON IN
STATE CUSTODY

0·6 –  4 4 5

| UNITED STATES DISTRICT COURT | DISTRICT OF THE STATE OF DEL |
|---|---|

| NAME: RALPH REED | PRISONER NO. 320813 | CASE NO. |
|---|---|---|

PLACE OF CONFINEMENT: DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD SMYRNA, DE 19977

PETITIONER:                    RESPONDENT:

RALPH REED    V.        THOMAS L. CARROll
PRISONER SBI #320813        D.C.C. WARDEN



FILED
JUL 21 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

THE ATTORNEY GENERAl OF THE STATE OF DELAWARE

CARl Danberg

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


RALPH REED
　　Petitioner,

　　V.

THOMAS L. CARROll
　　Delaware correctional center,


MEMORAN OF LAW
IN SUPPORT OF PETITIONER'S HABEAS CORPUS


DATE:

_____
Ralph Reed
Delaware correctional center
Smyrna Del 19977

# TABLE OF CONTENTS

TABLE OF CITATIONS   VI, VII

NATURE AND STAGE OF PROCEEDINGS   1,

SUMMARY OF ARGUMENTS   2,6

STATEMENT OF FACTS   7,9

ARGUMENTS

I. The State court Violated The Federal Constitutional by _Illegal Arresting_ The Petitioner In violation of United States   10,11

II. The State court Violated clearly established Federal constitutional Law As established by The U.S. Supreme court in _mirand v. Airzona_   12, 13

III The State court Violated The Federal Constitutional by admitted Evidence of The _Grand Jury Indictment_   14

IV. The State court Violated The Federal Constitutional by _Impartial Jury_ As established in _Batson v. Kentucky_ 476 US. 79 (1986) And _Riley v. Taylor_ 277 F3d

V. The State court Violated The Federal constitutional by useing of _Unconstitutional_ _Voir Dire Questioning_ Resulted In Discriminatory Selection of Jury As established _ in _Batson V._ _Kentucky_ 476 U.S. 79 (1986) And _miller-El V. cockrell_ 123 S.ct. 1029 (2003) The 6Th And 14Th Amendment
                                                                17, 2'

VI. The State court Violated The Federal constitutional by _Disparate Treatment of similarly situated_ _Black And white Jurors_ Is Pretext For Discrim. Ination As established in _Batson V. Kentucky_ 476 U.S. 79 (1986) And _Riley V. Taylor_ 277 F3d 261 (2001)
                                                                28, 33

VII. The State court Violate The Federal constitutional by admitted _prosecutor misconduct_ of False Testimony Evidence Lacked Relevance And was Highly prejudicial Plain Error As established in _U.S. V. wallach_ 935 F.2d 445 (1991).        34, 35

VIII. The State court Violated The Federal constitutional by Admitted Evidence subject to Delaware Rule of _Evidence 404(b) of Alleged prior Firearm_ Discharges Absent The commplete Analysis Required By Delaware Law As established in _Allen V. State_ Del supr. 644 A2d 982 (1994)
                                                                36

ii

IX. The state court violated The Federal constitutiona admitted Plain Error. By misapplied Delaware Law And Rules of Evidence Limiting Trial Testimo In Jury Instructions As established in probs V. State Del supr 547A2d 114(1988)

37

X. The state court violated The Federal constitutional by Trial Judge And Trial counsel was Ineffective at Every stage of The Trial criminal proceeding That Took Place In violation of Petitioner's 5th 6th and 14th constitutional Amendment Rights As established in Strickland V. Washington 466 us. at 687 80 LEd. 2d 674, 104 s.ct 2952. Albury V. State Del supr 551A2d 53 And Lockhart V. Fretwell 113 sct. at 838.

38, 57

XI. The state court violated The Federal constitutional by not concluding That Petitioner's Trial counsel Deprive Him of His 6th Amendment Right To Effective Assistance of counsel For Failing To Properly In Vestigate And subpoena Two crucial Defense witnesses who would support petitioner's story That keyon Horsey committed The crime

58, 7'

(A) The Trial court And States Attack on Jerom Reed's credibility was Improper.        59

iii                    (Continued)

(b) materialiy oF Jerome Reed's AFFidaVit          63

(C) ms. Deshiled's Testimony shows That state's witness
    SArah Handy was Involved In The crime.          68


XII. The state court Violated The Federal constitutional
     by Denying petitioner's claim That His Trial counsel
     Improperly opened The Door For The state To Introduce
     ms. west's 3507 statement Violated The Petitioner's 5Th
     Amendment Right Against Self-Incrimination And
     6Th amendment Right To EFFective Assistance oF
     counsel          74, 79


XIII. The state court Violated The Federal constitutional
      by Trial counsel Failed To Request A Full chance
      Instruction on The Lesser Included oFFenses oF
      murder As established ! in chance V. State 685
      A2d 351 (1996)
                                                    80, 81

VX. The state court Violated The Federal constitutional
    by Trial counsel Fail To Raise Brady Violation That
    The prosecution Failed To INForm Him that they Had
    Implicitly promised mr. Horsey Immunity From
    Prosecution on The murder charge As An Accomplice
    Brady V. maryland 373 US. 83. 83. S. Ct. 1194. 10. L.Ed2d 215
    (1963) Violated Petitioner 6Th amendment Right
                                                    82, 84

iiii

XV. The state court Violated The Federal constitutional
    by Trial Counsel Fail to Filed A motion To suppression
    hearing That police AFFidAVit OF Probable cAUSE
    And Arrest warrAnt was Based on False Information
    As established in Franks V. Delaware 438 US.154. 98
    S.ct. 2674. 57. L.Ed 2d 667 (1978).

                                                            85, 86

XX. The state court Violated The Federal constitutional
    by Trial counsel Failure To File motion For acquittal
    Denies The sufficiency OF The EVidence That Trial
    proceeding In Violation oF The 14Th Amendment To
    The united states constitution As establish .ed in
    State V. Biter 119 A2d 894 Del. super. (1955).

                                                            87, 88

XXI. The state court Violated The Federal constitutional
    by Trial counsel Denied Petitioner oF His 6Th Amendmen
    Right To EFFective Assistance oF counsel on Direct
    Appeal. see Reed V. State No. 44. 2001 order. As estad
    lelished in strickland V. washington. 466 US. 668 (1984)

                                                            89, 91

CONCLUSION . . . . . . . . . . . . . 91, 92

V

TABLE OF CITATIONS

CASES                                                                    PAGES

Albury v State  551 A.2d 53 (Del super 1988) . . _ _ _ _ _ _ _ 38

Allen v. State  644 A2d 982 (Del super 1994) _ _ _ _ _ _ _ 36

Batson v. kentucky 476 US 79 (1986) . _ _ _ _ _ _ _ _ 2,3,15,16,17,27,28.

Berger v. US  295 US 78.88-89 _ _ . _ _ _ _ _ _ _ . 4,35

Berryman v morton  100 F.3d 1089 (3rd cir 1996) _ _ _ _ _ 39,54,73,78

Brady v. maryland 373 U.S. 83 (1963) _ _ _ _ _ _ _ 1,V,5,82

Chance v. State  685 A2d 351 (Del supe 1996) _ _ _ _ _ _ 71,80

Davis v. Alaska  415 US 308. 320 (1974) _ _ _ _ _ _ _ 47

Evitts v. Lucey  469 US. 387.396.99 (1985) _ _ _ _ _ _ _ 56,91

Fensterer v. State  493 A2d 959.963 (Del supr 1988) _ _ _ _ _ 47

Filmore v. State  813 A2d 1112 (Del super 2003) _ _ _ _ _ 8

Franks v. Delaware  438 US. 154 (1978) _ _ _ _ _ _ 1,V,2,5,10,11,51,85

Harrison v. Ryan  909 F.2d 84.88 _ _ . _ _ _ _ _ 3,28,

Hatcher v. State  337 A2d 30 (Del super 1975) . _ _ _ _ 55,89,90

Jackson v. State  770 A2d At 514-516 _ _ _ _ _ 84

Jacobs v. State  358 A2d 725 (Del supr 1996) _ _ _ _ 17,

Johnson v. Ellingsworth 783 F. Supp. 215. 221 (Del supr 1992) _ _ _ _ 19

Johnson v. State 711 A2d 18. 30. 31. (Del supr 1998) _ _ _ _ 81,83

Jones v. wood  207 F3d 557. 562.63 (9th cir 2001) _ _ _ _ 5,42,43,46,64,70,73

Kyles v. whitley  514 US 419 (1995) . _ _ _ _ _ _ 71,72.

Lilly v. State  649 A2d 1055. 1059 _ _ _ _ _ _ 4,

Lockhart v. Fretwell  113 S.ct. At 838 _ _ _ _ _ _ 38,39

miller EL v. cockrell  123 S. ct. 1029 (2003) _ _ _ _ _ 3,17,19,27,32

miranda v. Arizona  384 US. 436 (1966) _ _ _ _ _ _ 2,12,

mu'min v. virginia  500 US. 415.431 (1991) _ _ _ _ _ 22,

pop v. state  632 A.2d 73 (Del super. 1993) _ _ _ _ _ 4

Poteot v. State  No. 94. 2003 _ _ _ _ _ _ 2,

Probst v. State 547 A2d 114 (Del supr 1988) . . . . . . . . . . . . . . 4,37,

Pryor v. State 453 A2d 98, 100 (Del supr 1982) . . . . . . . . . . . 47

Purkett v. Elem 514 US. 765. 768 (1995) . . . . . . . . . . . . . . 29,

Ray v. State 387 A2d 439 (Del supr 1991) . . . . . . . . . . . . . 75

Reed v State No. 44, 2001 (Del. 2001) . . . . . . . . . . . . . . . V, 1, 6, 55, 90

Renal v. State 450 A2d 382, 384 (Del supr 1982) . . . . . . . . . . 39, 74

Rickman v. Bell 131 F.3d 1150 1156. 60 (6ᴿCir 1997) . . . . . . . . . . 57, 91

Riley v. Taylor 277 F.3d 261 (3ʳᵈCir 2001) . . . . . . . . . . . . . . 15, 16, 28, 30, 31,

Shockley v. State 565 A2d 1373, 1377 (Del supr 1995) . . . . . . . . . 58

Smith v. State 669 A2d 1 (Del super 1995) . . . . . . . . . . . . . . 74, 77

Stante v Biter 119 A2d 894 (Del super 1955) . . . . . . . . . . . . . . V, 6, 53, 87, 88

State v. Clark 78 Wash. App. 471 898. p2d 854, 853 (1995) . . . . . . 43, 64

State v. Collier 553 So. 2d 815. 821 (LA 1989) . . . . . . . . . . . . . . 32

State v. Rooks 401 A2d 943 (Del supr 1979) . . . . . . . . . . . . . . 55, 79, 89, 90

Stirone v. United States 361 US 212 . . . . . . . . . . . . . . . . . . 4, 35

Strickland v. Washington 466 US. 668 (1984) . . . . . . . 2, 34, 8, 10, 11, 12, 13, 16, 20, 35 37, 39, 58, 89,

Tice v. State 624 A2d 399, 401 (Del super 1993) . . . . . . . . . . . . . 4

United State v. Cronic 466 US. 648, 649 (1984) . . . . . . . . . . . . 57, 91

United State v. Mannino 212 F.3d 835. 845 (3ʳᵈCir 2000) . . . . . . 56, 91

United State v. Wallach 935 F.3d 443 (1991) . . . . . . . . . . . . . 3, 34,

Webster v. State 604 A2d 1364 (Del. super 2002) . . . . . . . . . . . 8

Del. Const. Art. I. sec 7 . . . . . . . . . . . . . . . . . . . . . . . . 8

11 Del. c. 5 3507 . . . . . . . . . . . . . . . . . . . . . . . . . . . 56, 74, 75, 77, 90, 91

Super. ct. crim. Rule 61(i)(5) . . . . . . . . . . . . . . . . . . . . . 4, 37,

D. R. E. 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 44, 46, 64, 65, 80

11 Del. c. 555. 631. 632 & 635 . . . . . . . . . . . . . . . . . . . . . 8, 71

Del. Rule 103(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

VII.

## NATURE AND STAGE OF PROCEEDINGS

ON MAY 16, 2002 a SUSSEX COUNTY JURY found the Petitioner Ralph Reed guilty of Murder in the First Degree and Possession of a Firearm during the commission of a Felony.

Thereafter Mr. Reed filed a motion for a New Trial Which was subsequently denied by the trial court on December 19, 2000. State V. Reed 2000 WL 33179685 (Del. Super.) The Delaware Supreme Court Affirmed Mr. Reed's convictions on direct appeal. Reed V. State 782 A2d 266 Del. 2001).

ON July 8, 2004, Mr. Reed filed a Motion for Post-conviction relief Pursuant to Superior court criminal Rule 61 (Rule 61) then Filed several more Pro se amendments or supplements. Defense counsel entered his Appearance and Participated in the evidentiary hearing and briefing ON March 3, 2005, and April 8, 2005. Briefing was concluded on August 25, 2005. Subsequently on october 5, 2005 the trial court denied Mr. Reed Motion for Post-conviction relief. State V. Reed No. 9911018706(R-1) Petitioner Appealed to the Delaware Supreme court No. 534 2005 The Supreme court Affirmed on MAY 26, 2006 This is Petitioner's Memorandum of Law in support of his Petition for Habeas Corpus.

## Summary of THE ARGUMENTS

1. Petitioner's Fourth Fifth Sixth and Fourteeth Amendment under the United State constitution where Violated by the Arresting Officer For Filing False police Reports and Sworn Affidavits Under the Penalty of Perjury <u>FRanks V. Delaware</u> 398 A2d 783, 86, illegal Arrest of the Petitioner in Violation of his Constitution rights Which warrants Reversal of conviction For Violation of Petition Fourth Fifth Sixth and Fourteeth U.S.C.A.

2. Petitioner's Fifth Amendment right to remain silent was Violated Under <u>miranda V. Arizona</u> 384 US. 436 (1966). See Police Work Sheet Exhbit A-160 Trial counsel should have challenged the Voluntaries of these statements which could have resulted in the in criminating statements being thrown out.

3. Petitioner's Indictment was Filed in Violation of Double clause Violating his Fifth Sixth and Fourteeth constitutional amendment rights. <u>count II</u> of the Indictment Possession of A Firearm During the commission of A Felony merges and is included in <u>count I</u> of the Indictment. The Petitioner's Sentence will regards to weapon offense Violates the Principles of the double jeopardy clause <u>Poteat V. State</u> Del. Supr. No 94. 2003

4. Petitioner's trial counsel Violated his United State and Federal Constitution right to A Fair impartial Jury of his Peers under <u>Batson V. kentucky</u> 476 U.S 79 (1986) Which trial counsel was Ineffective of Petitioner's Right to A Jury trial. <u>Strickland V. Washington</u> 466 U.S. 668 (1984)

2.

5. Petitioner's sixth and fourteenth Amendments United state and Federal constitution discriminatory Voir Dire questioning was to secured an all white jury composed of unidentified white jurors who may know the victim or victim's relatives or their friends or associate <u>Miller-EL V. Cockrell</u> 123 S.ct. 1029 (2003) disparate Voir dire questioning Violate <u>Batson</u>). 476 US. 79 (1986)

6. Petitioner's sixth and fourteenth United States and Federal constitution, Amendments right was Violated on disparate treatment of similarly Situated Black and white Jurors IS Pretext For Discrimination of the races who are similarly situated when exercising peecemptory Challenges, as the state did in Petitioner case is a pretext For purpose Full discrimination. see <u>Riley V. Taylor</u>. 277 F.3d 261. 282-83 (3d cir. 2001). Riley is a recent Delaware case wherein the Third circuit court condemned this same exact discriminatory practice in the jury selectio Process. see <u>Harrison V. Ryan</u> 909 F.2d 84. 88 (3d. cir). cert. denied 498 US. 1003 (1990) (holding that exclusions of one Black juror From jury on the basis of race is sufficient to require a new trial Pursuant to <u>Batson</u>) 476 U.5. 79 (1986)

7. Petitioner's Due Process right where Violated by Prosecutor misconduct in that the Prosecutor used testimony was made up by Detective Fraley and that such testimony should have not been used <u>U.S. V. Wallach</u> 935 F.2d 445 (1991). with out this False testimony there likely Probability the Petitioner may have been acquitted of all Charges. Inffective <u>Strickland V. Washington</u> 466 U.S. 668 (1984) and

incompetent representation was responsible for allowing injustice to go unchallenged. <u>Berger V. US.</u> 295 US. 78:88-89 55 SCt 629 Stirone V. United State 361. US. 212; 80 SCt 270

8.  Petitioner's FIFth Sixth and Fourteeth constitutional rights was Violate by trial court committed error of Law which deprived him of A Fair trial. when it admitted evidence-subject to Delaware Rule of Evidence 404(B) and 403. see <u>Lilly V. State</u> Del. supr. 649 A2d 1055.1059 (1994). <u>Pope V State</u> Del. supr. 632 A2d 73 (1993) <u>Tice V. State</u> Del Supr. 624 A2d 39 401 (1993) of Alleged Prior Firearm discharges.

9.  Petitioner's trial court Violated his due process rights to a Fair trial committed Plain reversible error misapplied Delaware law and Rules of evidence resulting in a total miscarriage of Justice Superior ct. Crim. R. 61(i) 5. in limiting trial testimony in it's jury instructions. <u>Probst V. State</u> Del supr. 547 A2d 114 (1988). Delaware Rule of evidence 103(

10. Petitioner's trial counsel errors were so grievous that his perfor performance fell below an objective standard of reasonbleness <u>Strickland V. Washington</u> 466 US. 668 (1984) that Violated Petitioner constitutional right of Ineffective assistance of counsel.

11. Petitioner's trial counsel Deprive him of his 6th Amendment right To effective assistance of counsel <u>Strickland V. Washington</u> 466 US. 668 (1984 For Failing to properly investigate and subboena Two crucial Defense witnesses who support Petitioner story that Kenyon Horsey committed the crime. Petitioner made several request to his trial counsel to interview and subpoena Jerome Reed and Kenyon Banks mr. J. Reed's

would have testified that he observed kenyon Horsey shoot and kill Gregory Howard as Howard drove away. See Jerome Reed's Affidavit Attached here to Exhibit A-10 Petitioner State and Federal Constitutional was Violated see. D.R.E. 404(b) and Jones V. Wood 207 F.3d 557, 562-63 9th cir. 2001).

12. The Lower court abused its discretion in allowing the state to introduce a prior statement in Petitioner's trial which was allowed by the petitioner's trial counsel Strickland V. washington 466 US. 668 (1984). Smith V. State 669 A2d 1 (Del supr. 1995).

13. Petitioner trial counsel should have requested the trial court to give the Jury a Full Chance v. State 685 A2d 351 (1996) instruction on the lesser included offenses of murder.

14. Petitioner trial counsel to raise Brady Violation that they had Implicitly promised mr. Horsey From Prosecution on the murder charge. Brady V. maryland 373 U.S 83.83 Sct. 1194. 10 LEd. 2d 215 (1963) This Improper plea bargaining policy by the state implicitly deal out promises Violated petitioner 6th amendment right to effective cross.

15. Petitioner trial counsel had Filed a timely suppression motion under Franks V. State 438 US. 154. 98 Sct. 2674. 57 L. Ed 2d 66 (1978) based upon the Facts a reasonable Probability the trial court would have dismissed all charges due to inValid arrest warrant.

16. Petitioner trial counsel should had File a motion For acquittal
    IF he had properly investigated interviewed 2 key witnesses
    adequatly prepared For trial. the trial court to take the case
    From the jury. And direct a verdict oF acquittal in Petition
    Favor state v. Biter 119A2d 894 (Del. super. 1955)

17. Petitioner trial counsel denied hem oF His 6$^{TL}$ amendment right to
    eFFective assistance oF counsel on direct appeal to the Delaware
    supreme court. trial counsel escalated his gross misconduct
    Reed v. state Del. super. ct. No. 44. 2001. order.

## STATEMENT OF FACTS

On May 16, 2002, they Found Petitioner Ralph Reed guilty of murder in the First Degree and Possession of a Firearm during the commission of a Felony. The Firearm was never recovered or produced into evidence during trial.
The only evidence the prosecution produced at trial against the Petitioner was the account of (4) alleged eye witnesses, yvonne Deshields, Sarah Handy, Juanita Hopkins and Reshawn Jefferson. The Petitioner's defense at trial was that mr. Horsey was the actual perpetrator of the crime. Because trial counsel wasn't in Petitioner's best interest. counsel advanced a weak Alibi defense that Petitioner was at his grandmother house asleep during the shooting. Therefor, trial counsel never investigated the names of potential witnesses Petitioner's provided him within which who would support Petitioner's defense that keyon Horsey was the actual killer. The other Four state witnesses Against Petitioner were all involved in mr. Horsey's illegal drug dealing enterprises. As well As Petitioner And the evidence support that the Four state witnesses were involved in the killing of the Victim with mr. Horsey. During the preparation of his post-conviction relief motion the petitioner discovered the location of one witness he asked his counsel to investigate prior to trial who would support Petitioner's defense that Kenyon Horsey was the actual killer. This witness was Jerome Reed.
The lower court conducted an evidentiary hearing on march 3, 2005 and April 8, 2005, Jerome Reed testified at his hearing

7.

that on the night on the crime he observed keyon Horsey and ylvonne Deshields sell drugs to the murder victim and that mr. Horsey pulled out a gun and fired multiple shoots into the victim's vehicle. He further testified that ms. Deshields dispose of the gun for mr. Horsey. The state improperly attacked and discredited petitioner's and Jerome Reed's credisility at the evidentiary hearing by official who claimed that petitioner and Jerome Reed were cellmates from Jun 22, 2004 until February 22, 2005 in building 22 of the maximum housing unit. The evidence was used to infer that at this period of time petitioner and Jerome Reed made up the story that Jerome actually witnessed mr. Horsey shoot the victim as contended in Jerome's sworn affidavit.

Because petitioner advanced a "same character" claim that someone other then he committed the crime qualify as actual innocence claim. to which no procedural bar apply. See webster v. state 604 a2d 1364 (Del. supr. 2002). This claim is brought under Jones v. wood 207 F.3d 557 9th Cir 2000). The same character evidence is a defense permitted under D.R.E. 404(b). Jerome Reed's affidavit supports petitioner's actual innocence claim. The selection of an all white jury within uniden-tified jurors possisly knowing the victim of crime or victim's family, friends or their associates, violate the essential demands of Fairness under article I section 7 of the Delaware constitution. see Filmore V. state 813 a2d 1112 (Del 2003). Petitioner appeal his post-conviction Rule 61 to the Delaware supreme court which was affirmed on may 26, 2006. This is petitioner's memorandum of law in support of his Habeas corpus petition.

Thus, Petitioner was entitled to permit the jury to
determine his mental state and what degree of murder
he is responsible for, whether it be First degree 636(a)
second degree 635, manslaughter 632 or criminally
Negligent homicide 631, because if the jury was properly
instructed on the various degrees of lesser included
offenses under 11 Del. C. 5 271 and 274 it could have found
that Petitioner's participation was minor and that his drug
activities was likely to result in substantial harm to
Another supporting a verdict on criminally negligent homicide.
Strickland v. Washington 466 US.668 (1984) Petitioner conclude by asking
the court to correct the obvious injustices that are perpetuated
Against him by trial counsel.

Argument

I. The state court violate The Federal
   Constitutional by Illegal Arresting
   The petitioner In violation of The
   United states constitutional

Standard and scope of Review

The standard and scope of Illegal Arresting
examination lies in the broad discretion of
the police Filed False reports For Illegal Arreste
of Petitioner $4^{Th} 5^{Th} 6^{Th}$ and 14Th Amendments To
The United States constitution Strickland V. Washington
466 US. 668 ℰ 1984), Franks v. States 398 A2d 783. 86 (1978)

Argument

   Petitioner Arrest was illegal because the Arresting officer
did not have sufficient probable cause to make an Arrest
of petitioner. which Violated the petitioner's $4^{Th} 5^{Th} 6^{Th}$ and 14Th
Amendment Rights. petitioner states that the crime in question
took place on or about November The petitioner was Arrested
Almost immediately on November before the police conducted
An Adequate investigation or interviewed other witnesses that
were supposedly near the scene of the crime. (A 102 to A 103)
petitioner claims that the police Filed False police Reports
and sworn affidavits under the penalty of perjury claiming
that the petitioner had made several statements which

...were Neither written Nor taped to support the police
...officers reports or affidauits. Had the police officers
...conducted a proper unbiased investigation it would have
...revealed that kenyon Horsey was . the Shooter and that
...it was yuonne Deshields who retrieved the weapon then
...disposed of it. (SEE) Franks V. State 398 A2d 783,86 The police
...Failure to conduct adequate investigation of the facts
...And reliance on testimony of yuonne Deshields whom
...was directly involved inconjunotion with it's refusal to
...perform parafin test for residue of Petitioner resulted in
...the illegal arrest of the Petitioner in violation of his
...constitutional right. It should be noted that no murder
...weapon was even recovered all of which warrants reversal
...of convictions For Violation of Petitioner 4th, 5th, 6th, And
...14th United State constitution. Strickland V. Washington 466 US.
...668 (1984) (See. A-156 to 159)

11

## Arguments

II. The state court violated clearly established
Federal constitutional Law as established
by the U.S. supreme court in <u>mirandaV. Airzona</u>
384 U.S 436 (1966)

### Scope And Standard of Review

The scope of miranda lies in the broad discretion
of the trial judge And arrest officers Abused Its
discretion. <u>miranda V. Arizona</u> 384 US. 436 (1966) review
Standard <u>strickland V. washington</u> 466 US. 668 (1984)

### Argument

Petitioner claims that he exercised his miranda rights after
he was Apprehended. Despite petitioner exercising his miranda
Rights to Remain silent And clear indication that he did not want
to talk with Detective Fraley. detective Fraley continued to
question him in Violation of his 5TH constitutional Amendment
rights.(SEE And Compare) <u>miranda V. Arizona</u> 384 US 436 (1966).
Also see police worksheet Exhibit (A-160) Det. Fraley wrote "I asked
DeF/Reed iF he wanted to put this information on A taped statement
And he said No. Clearly the defendant had indeed exercised his
5TH Amendment right to remain silent. yet Detective Fraley
Continued to Ask A series of questions despite petitioner insistance
that he did not wish to speak with him without counsel. Trial
Counsel should have challenged the Voluntariness of these statemen

12

which could have resulted in the incriminating statement
being thrown out. Which would have in all probability
substantially altered the juries Verdict. Strickland V. Washingto
466 US. 668 (1984).

Argument

III. The state court Violated The Federal
Constitutional by Admitted Evidence
OF The Grand Jury Indictment

Scope And Standard OF Review

The scope oF Grand jury Indictment Violate
Petitioner 5th 6th And 14th constitutional amend
ment. Standard and review by the double
jeopardy clause, Potent V. State Del. supr no. 94. 2003.

Argument

Petitioner claims that the Grand jury Indictment was Filed
in violation oF the double jeopardy clause Violating petitioner
5th 6th and 14th constitutional amendment rights. Petitioner claims
that count II oF the indictment Possession oF A Firearm
during the commission oF A Felony merges and is included.
in count I oF the indictment. There For the Petitioner
sentence with regards to weapon oFFense Violates the
prinaple's oF the double jeopardy clause. As estadlelished
in Potent V. State Del. supr. No 94 2003. (See A-161 to A-162).

14

## Argument

**IV.** The state court Violated The Federal Constitutional by Impartial Jury As established in Batson V. Kentucky 476 US. 79 (1986) And Riley V. Taylor 277 F3d 261 (2001)

### Scope And Standard of Review

The standard And scope of Review Impartial jury Under Batson V. Kentucky 476 US. 79 (1986) And miller EL V. Cockrell 123. Sct. 1029 (2003) And Riley V. Taylor 277 F3d 261 (3d cir. 2001). that Violate petitioner 5th 6th And 14th constitutional Amendment Rights to A Fair Impartial Jury Filmore V. State 813 A2d 112 Del 2003) and strickland V. Washington 466 US. 668 (1984)

### Argument

In the state's Response At paragraph 4, they premise their Argue on Riley V. State Del super 496 A2d 997 (1985) that the prosecution did not discriminate in jury selection process on basis of race. The standard in Riley 496 A2d At 1011-1013 like the Freddiman V. Sta. Del super ch.No.203 1988 Holland. J (February 22 1989) holding that peremptory challenges can be exercised "Not solely on the race" has been rejected in the Third circuit court decision of Riley V. Taylor 277 F3d 261, 285 (3d cir 2001) petitioner was denied his 5th 6th And 14th constitutional Amendment

15

... Rights to a Fair and Impartial Jury trial. when the trial court and defense counsel allowed the prosecution during Jury selection to strike the one and only black juror For cause even after voir dire wherein the juror submitted that she could Render a Fair and impartial Verdict(Tr. C-7)While the trial court Allowed the white juror to remain on the jury despite this white juror to admitted knowing the deceased brother as they were co-workers.(Tr.B-4)Still his juror was left on the jury while the one and only black juron was removed.(Tr. C-8)This process of removing black juron and allowing white juror to remain was clearly racially motivated bias prejudical and unconstitutional. BATSON v. KENTUCKY 476 US. 79 (1986) And Riley V. Taylon 277 F.3d 261 (2001 deprived the petitioner of due process 5Th 14Th As well as his 6Th Amendment right to impartial Jury trial. Strickland V. Washington 466 US. 668 (1984) which in all likely probability undermined the Out Come.

Due to this unconstitutional process the petitioner was forced to go to trial Facing All white jurors. which led to an unFair verdict oF guilty. Petitioner conviction based on this and other errors of LAW should be Vacated and remanded For a New Trial.

16.

Argument

V. The state court violated The Federal constitutional by useing of unconstitutional Voir Dire questioning Resulted In Discriminatory selection of Jury As establelished in Batson V. Kentucky 476 US.79(1986) and miller-El V.Cockrell 123 S.ct. 1029 (2003) violated 6th and 14th amendment

Scope And Standard of Review

The scope of Voir dire examination lies in the broad discretion of the trial Judge and is subject to review only For abuse of that discretion. Jacobs V. state 358 A2d725 (Del. supr. 1996). Also, the discriminatory use of Voir dire Questioning which Violate Batson V. kentucky 476 US. 79(1986). Is reviewed by the standard set Forth in miller-El V. Cockrell 123 S.ct 1029(2003)

Argument

The trial Judge himself intentionally discriminated against every African-American in sussex county and his misconduct was criminal. Because this racist Judge, T. Henley Graves, white supremist actions he did not provide a Full and Fair Adjudication on the racial discriminatory claims in selecting of the jury. On April 3rd thru April 8, 2005, the trial court conducted an evidentiary hearing based upon the claims inserted in petitioner motion For An Evidentiary Hearing. (see petitioner motion For Evidentiary

..discriminatory claims in selecting of the Jury.

... on April 3rd thru April 8, 2005, the trial court conducted an evidentiary hearing based upon the claims inserted in petitioner's motion For An Evidentiary Hearing. (See petitioner's motion For Evidentiary Hearing. Attached petitioner's motion To Remand and To Stay Briefing on Appeal Filed in the Supreme court. The issue involved the sussex county superior court and Attorney General office white Judicial officials systematically support of racism in the Jury selection process which routinely uses Unconstitutional Voir dire Questioning policy to exclude African-Americans. From Jury service and to allow All-white persons to serve on Juries whom may know the Victim of Crime without any counter-questioning to identify such persons.

prior to the scheduled evidentiary hearing petitioner wrote to the trial court requesting the Appointment of An Attorney to represent him due to the complexity of the issues raised in the postconviction motion, especially the Batson claim which involve the obvious discriminatory disparate Voir dire questioning which were specifically targeted at excluding African-American Venire members affiliated with the petitioner while permitting white Venire members to serve on the Jury who actually knew or could have been Friends with the Victim and his Family without being identified (see petitioner's February 25, 2005 Letter To Judge Graves A-67 to A-69).

Before the court ruled on petitioner's request For Appointment of Counsel, his mother hired An Attorney to represent him at the hearing. However, the Attorney did not properly raise the

18

_Batson_ issue at the evidentiary hearing; nor did he investi
gate and collect statistical evidence of the prosecutions
use of the disparate Voir dire questioning policy in other prior
cases to support a Batson/Swain prima Facie case of
systematic exclusion of a particular race From Jury service
or to secure Juries who know the Victim of crime. Nor did the
trial court require the prosecution to satisfy step two of _Batson_
to its use of peremptory challenges and the disparate voir
dire questioning.

Since there is no right to the 6th Amendment effective assistance
of counsel in a postconviction proceeding for deFaulted claims
see Johnson V. Ellingsworth 783 F. supp. 215. 221 (D. Del. 1992) on April
27, 2005, prior to any Final decision petitioner wrote a Letter
to Judge Graves requesting that additional evidentiary hearing
or inquiry need to be held on the unsolved _Batson_ regarding
the disparate Voir dire questioning of similarly situated white
and Black Venire members which resulted in the purposeful
exclusion of the Black Jurors. (see petitioner's April 27, 2005
Letter To Judge Graves A-70 to A-75).

In petitioner's December 20, 2004 Letter/BrieF to the trial court
he made out a prima Facie case that the prosecution in Fact
used disparate questioning which later resulted in perposeFul
discriminatory treatment of Black and white Venire members.
The United States supreme court stated in miller-EL V.cockrell
123 S.ct.1029, 1043 (2003) that: "It Follows that, iF the use of
disparate questioning is determined by race At the outset it
is likely a JustiFication For a strike based on the resulting
divergent views would be pretextual." Id. (see petitioner's

December 20, 2004 Letter/Brief A-79 to A-80). In this context the differences in the questioning posed by the prosecutors are some evidence of purposeful discrimination. Batson 476 U.S. at 97, 106 s.ct. 1712 ("Similarly the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of dicriminatory purpose"). miller-EL. Id at 1093.

In petitioner's case the voir dire transcripts explicitly show that the trial court itself asked any prospective jurors who may "know the petitioner's or his friends or relatives," to identify themselves for purpose of being excluded. (see T.Tr. Vol. A.pg.4. A-1). However, no such question was asked the jury panel regarding any juror who knew the victim or his friends or relatives for purpose of being excluded. (see T.Tr. Vol. A.pg. 6. A-2). Also see motion for Evidentrary Hearing with Jury selection Transcripts Attached hereto. Because that question was asked the panel from the outset, every juror that revealed they knew the pitition er or his friends and relatives were excluded for cause by the court or challenged for cause by the prosecution.

As petitioner argued in his motion for Evidentiary Hearing the friends and relatives of any person is of that person's own race, another statistical fact that counsel failed to proffer with available historical records in support to show the prosecution's discriminatory intent under Batson/Swain standards.

In comparison of similarly situated black and white jurors a black juror. ms. Turner was excluded by the prosecution for cause because she revealed that she vaguely knew the state's witness

Darren Bacon's mother from work and mr. Bacon and her son were friends. And four (4) other jurors were excluded for cause by the trial court for similar reasons. Because no such question was asked the venire regarding the victim's family and friends from the outset of jury selection no white juror, or otherwise, who may have been affiliate with the victim personally or his friends and relatives, identified themselves to the trial court merely because they felt such informative was insignificant. This contention is evident when viewing the voir dire transcripts of a white juror, mr. Haley, who contacted the trial court on the second day of trial and stated that "he thought it might be important to inform the court that he knew the victim's brother from work." The victim brother attended the entired trial.

Knowing this information, neither the court, the prosecution or the petitioner's own trial counsel sought to have mr. Haley excluded for cause as it did with the black juror, ms. Turner and the other four (4) jurors who said they knew the petitioner's relatives or friends. Nor did the trial court or prosecution sought to findout whether or not there were any other unidentified jurors who knows the victim's relatives and friends. Contrary to what the trial court stated in its decision denying postconviction relief on page 7 (A-127). the court did not conduct an extensive voir dire of mr. Haley which should of involved further questioning or inquiry about the relationship he and the victim's brother had with their supervisor they both worked for at the Indian River Power plant. There was no other way to determine what relationship either mr. Haley

21.

or the Victim's brother shared with other co-workers at the plant that may have later influenced mr. Haley's impartiality. Thus the discriminatory intent of the state of Delaware in the Jury selection process is indisputable by the trial record themself. Since the trial court failed to fully adjudicate this issue on the merit and failed to require the prosecution to explain its use of disparate questioning and conclusion of similarly situated white and black venire members which resulted in the purposeful discriminator action against the Black jurors, thus this court on appeal must remand this case to the superior court before a different judge for a proper inquiry under steps two and three of Batson's mandatory test.

But in light of the grossly unconstitutional voir dire questioning there is no way to reconstruct the trial records to determine the identity of these jurors who might have knew the victim's friends or relatives that actual served on petitioner's jury, which require this court to automatically reverse petitioner's convictions and sentences. See, mu'min V. Virginia, 500 US. 415, 431, (1991) (Voir dire enables the trial court to select impartial Jury and assists counsel in exercising peremptory challenges)

But for trial counsel's unreasonable decision not to properly raise Batson violation and timely challenge the infirm voir dire questioning by the trial court, there is a reasonable probability that petitioner would not have been tried and convicted by an unconstitutionally impanelled jury. Strickland V. Washington 466 U.S. 668 (1984).

22.

proper objection to the prosecution (or State's) use of their peremptory challenges to strike the only black person, Ms. Bernice Turner, from the jury panel for identical reasons expressed by a white person, Mr. Jeff Haley, who was allowed to serve on the jury.

### The Unconstitutional Disparate Voir Dire Questions To Jury Panel

To begin with, at the outset of the jury selection, the trial court asked the entire jury panel seven (7) general voir dire questions:

a) Do you know anything about this case through personal knowledge, discussion with anyone, the news media, or any other source? (Tr. A-4);

b) Do you know the defendant or his friends or relatives? (Tr. A-4);

c) Do you know the attorneys in this case or any other attorney or employee in the office of the attorney general or defense counsel? (Tr. A-4)

d) Do you know the victim, Gregory Howard? (Tr. A-6);

(continue) ...

23.

e) Do you have any bias or prejudice either for or against the State or the defendant? (Tr. A-6);

f) Do you have any religious or conscientious reasons as to why you cannot serve as a juror in this case? (Tr. A-6); and

g) Is there any reason why you cannot give this case your undivided attention and render a fair and impartial verdict? (Tr. A-6)

Thereafter the trial court then stated to the jury panel:

Once again, this trial will begin today and will last approximately two weeks. If your answers to any of the above Questions is yes or you cannot serve through May 19th, please come forward. (Tr. A-6).

At that time the total of fifty one (51) people from the jury panel responded "yes" to the court's general voir dire questions, of which **Five (5) said they know the defendant/ petitioner** Ralph Reed or his friends or relatives. Four (4) of those jurors Jeremy Fisher, Leona Steen, Sandra Johnson and Amy Baker were excused for cause by the court. (See Tr. A-9, A-18, A-28 & A-32)

24.

After the State Failed to convince the trial court to excuse the Fifth juror, Bernice Turner, For cause (See Tr. A-23, A-30 & A-42), the State later exercised one of its peremptory challenges to eliminate the only Black juror Ms. Turner For cause because she may have casually known one of the witnesses Darren Bacon's mother, at which **time the petitioner's trial counsel made a poor** imprecise **Batson** objection to the State's securing an all white jury. (Tr. c-6 thru c-9). To be precise, **petitioner's trial counsel's objection was not based** upon his professional judgment and strategy, stating that:

But because of the family's concerns, I wanted this expressed to the court, and I suppose I want to lodge an objection just based on the family's concerns. (Tr. c-6, c-7).

Thus, out of the 51 jurors that responded to the Trial court's voir dire questions, none initially indicated any knowledge of knowing the victim's friends or relatives because no such question was asked the panel as it was asked regarding the **petitioner's friends or relatives**. (compare voir dire questions # b and # d herein above).

Furthermore, any juror who knew the victim's friends or relatives may have felt that they were not obligated to share this important information with the court and may considered it to be insignificant.

Thus, it is common-sense logic of reality that the majority of the friends and relatives of any person is of their own race and the person of the mind to discriminate would know this reality. That statistical reality is apparent from the racial make-up of **petitioners all white jury selected from a discriminatory** voir dire questioning policy which favor whites over blacks.

As indicated above, any member of the jury that responded affirmatively to the court's voir dire questions **were not selected to serve on the petitioners jury,** but all the black people were either excluded by the court for cause or challenged by the state for cause.

Although there may have been several white **people who were selected to serve on petitioner's** jury that knew the victim's friends or relatives (a reason generally cited for exclusion for cause, Tr. c-8), no whites were eliminated for this reason that resulted in the removal of all the blacks.

**For instance, on the second day of petitioners** trial a white juror, Jeff Haley, notified the court that he knew the victim's brother from

work but stated (Quote) "I know him to say hi" (Tr. B-4). (unquote) compare with black juror Ms. Turner's reply that (Quote) "no, I just know her", (A-43). Nevertheless the prosecution never asked the trial court to exclude Mr. Haley for cause as it did with Ms. Turner. (Tr. B-4, B-5). Nor did the trial court ask the rest of the jury members did they know the victim's friends or relatives. (Tr. B-5, B-6). And petitioner's trial counsel kept completely silent while the prosecution purposely discriminated in the jury selection process by securing an all white jury with one or more members that actually knew the victim's friends or relatives. (Tr. B-5, B-6).

Trial counsel never lodged an objection over the non-excusal of Mr. Haley based on Batson v. Kentucky, 476 U.S. 79 (1986) where, as here, there is disparate voir dire questioning which caused the black venire members to be singled out and excluded on count of their race while the white members knowing the white victim were permitted to serve on the jury in favor of the prosecution. Thus, such disparate discriminatory voir dire questioning has been condemned by the United States Supreme Court in Miller-El v. Cockrell, 537 U.S. 322 (2003). reversal convictions and order a new trial.

## Argument

### VI. The state court Violated The Federal constitutional by Disparate Treatment of similarly situated Black and white Jurors Is pretext For Discrimination As established in Batson V. Kentucky 476 U.S. 79 (1986) And Riley V. Taylor 277 F3d 261 (2001)

### Scope And Standard OF Review

The Standard And Scope of review similarly Situated Black And white Jurors purposeful discrimination. Riley V. Taylor 277 F3d 261, 282, 83 (3d cir. 2001). Also discrimination exclusion of one Black Juror on The basis of race Violate Batson V. kentucky 476 U.S. 79 (1986)

### Argument

The disparate treatment of the races who Are similarly situated when exercising peremptory challenges As the state did in petitioner case is A pretext For purposeful discrimination. See Riley V. Taylor 277 F3d 261, 282, 83 (3d cir 2001). Riley is A recent Delaware case wherein the Third Circuit court condemned this same exact discriminator practice in the jury selection process. See Harrison V. Ryan 909 F2d 88 88 (3d. cir). cert. denied 498 US 1003 (1990) (holding that exclusion of one Black

28

Juror From Jury on the basis of race is sufficient to require a New Trial pursuant to _Batson_)

The Third circuit court stated in _Riley_ that the _Batson_ inquiry has been characterized as a three-step one where "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury _solely_ on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. 277 F.3d at 275. once the defendant makes a prima facie showing of racial discrimination (step one), the prosecution most articulate a race-neutral explanation for its use of peremptory challenges (step Two). Id. If it does so the trial court most determine whether the defendant has established purposeful discrimination (step Three). Id. The ultimate burden of persuasion regarding racial motivation rests with. And does not shift from the defendant. Id. (citing _Puckett V. Elem._ 514 U.S. 765, 768, 115 S.CT. 1769, 131 L.Ed. 2d 834 (1995).

In petitioner's case although his trial counsel made a poor imprecise objection to the prosecution's use of its peremptory challenges to strike the one black juror step one of _Batson_ was established. (Tr. C-7)

At that time the petitioner's trial counsel and the prosecution attempted to satisfy step Two of _Batson_ by attempting to provide a race neutral reason for striking ms. Turner relying on the Delaware Supreme Court's decision in _Freddiman V. State._ Del. Supr. No. 203, 1988. Holland-J. (February 22, 1989) at 19 (the state most demonstrate that the peremptory challenges were made on grounds of specific, individual juror bias or on grounds reasonably related to the particular case on trial or its particular parties or witnesses and _not solely on the grounds of the jurors race_) (Tr. C-6 to C-8) However, the _Freddiman's_ "not solely on the ... race" standard has been rejected by the Thrid circuit court in _Riley_ and

Shown to be evident that the State's proffered race-neutral explanations were pretextual, because race can never play any factor at all in the jury selection process. <u>Riley</u>, 277 F.3d at 285.

The second problem is that the race neutral reason the State proffered on the record for its strike of Ms. Turner, in which the trial court acquiesce with, was a concern over the juror's mere acquaintance with one of the witnesses' mother (Tr. C-7 to C-9), a similar factor that existed with a white juror, Mr. Haley, being acquainted with the victim's brother but was still permitted to serve on the jury. (Tr. B-3 to B-6). This rationale like the <u>Freddiman's</u> <u>NOT solely on race</u> standard and the unfair voir dire questions all show the State's intent of disparate treatment of similarly situated Black and white jurors in the jury selection process.

    The State Has NOT Satisfied The
    Third Set of Batson To Explain Its
    <u>Disparate Discriminatory Policy</u>

When reviewing the trial record as a whole the prosecution's race neutral reasons for striking the only black juror Ms. Turner are both pretextual and **inadequate to rebut petitioners claim that the STATE**

did discriminate on the account of race. Thus, the trial record also reflect that the prosecution never offered any race neutral explanations for its disparate treatment of similarly situated black and white jurors or the disparate voir dire questions as to whether any juror knows defendant's friends or relatives while failing to propose the same question to the jury panel concerning the victim's friends or relatives. (See Voir Dire Questions (Tr. A-4 and A-6).

Therefore step three of Batson require this court **to make the ultimate determination whether the petitioner** established purposeful discrimination based upon each piece of evidence which should not be reviewed in isolation. Riley, 277 F.3d at 253. But first the State must satisfy step two of Batson which require this court to conduct an evidentiary hearing and evaluate all evidence introduced by each side (including all evidence introduced in the first and second steps) that tends to show that race was or was not the real reason and determine whether the defendant has met his burden of persuasion. Riley at 286.

As the record stand now the prosecution's explanation are clearly pretextual for purposeful discrimination especially when viewed together with the disparate **voir dire questions posed to the venire about petitioner's** friends and relatives who are black and the lack

of inquisition regarding the victim's friends and
relatives who are white, because the emphasis
of such disparate questions imply emphatically
a deliberate intent by the state to discriminate
**AGAINST ALL PETITIONER'S FRIENDS AND RELATIVES AND
ANY PERSON WHO KNOWS PETITIONER'S FRIENDS AND**
relatives who are black and a desire to exclude
them from jury service from the outside of the
jury selection, while permitting the victim's white
friends and relatives or any person who know
them who are white to serve on the jury without
any inquiry to identify them at all.

This evidence, of course, is relevant and sufficient
to the extent it casts doubt on the legitimacy of
**the motives underlying the State's actions in petitioner**
case. Miller-el v. Cockrell, 537 U.S. 322 (2003).

Lastly, both state and federal courts made clear
that the Batson step three inquiry is not merely
a formalistic one, but an integral element of the
required analysis. Riley at 290-91 (citing State v.
Collier, 553 So. 2d 815, 821 (La. 1989) (holding that
the trial judge cannot simply "[r]ubber stamp...
[a prosecutor's] non-racial explanation, no matter
how whimsical or fanciful... [but] in order to permit
a questioned [peremptory challenge]... must conclude
that the proffered reasons are, first, neutral and
reasonable, and, second, not a pretext"). Id. 291 n. 11.

.. WhereFore, For the good cause shown Above herein this court
.. should grant petitioner Ralph Reed 28 usc. § 2254 writ of
.. Habeas corpus on The BALSON claim.

## Argument

VII. The state court Violate The Federal
constitutional by admitted prosecutor
misconduct of False Testimony Evidence
Lacked Relevance And was Highly
prejudicial Plain Error as established
in U.S. V. Wallach 935F2d 445 (1991)

### Standard And Scope of Review

The standard and scope of review Prosecutor
misconduct whether the trial court committed
Plain error by Issued False testimony to the
Jury that was perjored to the petitioner US. V.
Wallach 935 F2d 445 (1991)

### Argument

petitioner was denied due process by prosecutor misconduct in that
the prosecutor used testimony that he made up and knew was perjured
petitioner states that the prosecution knew or should have known
that petitioner exercised his right to remain silent. As supported
by the record in that the accused refused to give taped statement
There Fore the prosecutor had clear and convincing evidence that
alleged Statements attributed to the accused was made up by Detecti
Fraley. And that such testimony should have not been used. /SEE And
Compare US. V Wallach 935 F2d445 (1991). with out this False testimony

34.

There is a likely probability the Petitioner may have been Acquitted of all charges. Ineffective and in competent representation was responsible _Strickland V. Washington_ 466 U.S. 668 (1984) For allowing injustice to go unchallenged. _Berger V. US._ 295 U.S. 78: 88-89, 55 Sct 629. _Stirone V. United States_ 361 U.S. 212; 80 Sct 270. (SEE- A-160)

## Argument

VIII The state court Violated The Federal Constitutional
by Admitted Evidence Subject to <u>Delaware Rule</u>
of <u>Evidence 404(b) of Alleged prior Firearm</u>
<u>Discharges</u> absent The commplete Analysis
Required by Delaware Law as established in
<u>Allen V. State</u> Del supr. 644 A2d 982 (1994)

## Scope And standard of Review

The standard and scope of Review is error of Law
reviewable <u>de novo</u> by state court. <u>Allen V. State</u>
Del supr. 644 A2d 982(1994) The question of whether
the trial judge properly Formulated and Applied
legal precepts governing the admissibility of evidence
is one Law.

## Argument

Petitioner Further Assents that the state court Violated The Federal con
stitutional by Violating his due process rights when it admitted evidence
Subject to the constitutional provisions of the 5th 6th and 14th as well as
the Delaware Rule of Evidence as set forth in Rule 404(B) of Alleged
prior uncharge Firearm discharges and illegal drug Activity as such
evidence lacked Relevence and was highly prejudical constitution
Reversible error. (Tr. A-171) the complete Analysis as Required by the con
stitution Delaware Law. <u>Strickland V. Washington</u> 466 US. 668 (1984) This
error of Law denied the Accused of the likelihood of Not guilty
Verdicts

36.

## Argument

IX. The State court Violated The Federal
Constitutional admitted Plain Error By
misapplied Delaware Law and Rules of
Evidence Limiting Trial Testimony In Jury
Instructions as established in probst V.
State Del Supr 547 A2d 114 (1988)

### Scope and Standard of Review

The standard and scope of review is whether trial
court committed plain error when it issued to the
Jury inappropriate limiting Jury instructions regarding
the purpose and use of certain trial testimony. probst V.
State Del supr 547 A2d 114 (1988) Delaware Rule of evidence
103(d).

### Argument

Petitioner trial court Violated his due process rights to a fair trial
committed Plain reversible error misapplied Delaware Law and Rules
of evidence resulting in a total miscarriage of justice (SEE superior
ct. crim. Rule 61(i) 5 in limiting trial testimony in its jury instruction.
Essentially the trial court prevented the petitioner from obtaining im
peachment and exculpatory testimony which would have substantia
lly affected the Verdict of the Jury when it limited trial testimony
in the jury instructions This error also Violated petitioner 6ᵗʰ amendmer
right to an impartial jury trial guaranteed by the United States
Constitution warranting Reversal. (Tr. A-163 to A-170) Strickland V.
Washington 466 US. 668 (1984)

37.

## Argument

X. The state court Violated The Federal constitutional
by Trial Judge And Trial counsel was Ineffective
at Every stage of The Trial criminal proceeding
That Took place In Violation of Petitioner's 5Th 6Th
And 14Th constitutional amendment Rights As
established in Strickland V. washington 466 US. At
687 80L.Ed.2d 674, 104 S.Ct. 2952. Albury V. State
Del supr 551 A2d 53 And Lockhart V. FretWell 113 sct.
A+838,

## Scope And Standard of Review

The standard And scope of review for this issue is
wether the state court abused its discretion indenying
Petitioner's postconviction motion based solely on out
come. Lockhart v. Fretwell 113 S.ct. A+ 838. Albury V. State Del
supr 551 A2d 53 Strickland V. washington 466 US. At 687
80L.Ed.2d 674, 104 S.ct. 2952.

## Argument

The 6Th Amendment guarantees the right to effective Assistance of
counsel, in criminal prosecution. Strickland the supreme court established
A two prong test with which to evaluate ineffective Assistance claims.1) the
counsel's performance Fell below An objective standard of reasonable
ness. 2) That counsel's deficient performance prejudice the defendant resulting
in A unrelieable or fundamentally unfair outcome. of the proceedings. The
court has held that the second prong of Strickland requirers more then

38.

A Showing that the outcome of the proceedings would have been different but for counsel's errors <u>Lockhart V. Fretwell</u> 113 S.ct. 838 that is Actual prejudice Id at 694. Dawson 673 A. 2d At 1190: <u>Renal V. State</u> Del. Supr. 450 A. 2d 382. 384.

Under the performance prong of Strickland there is a "strong presumption" that trial counsel's strategy And representation Fell within the "wide range of reasonable professional Assistance." Petitioner claims After consideration of this motion there should be no doubt that counsel's performance Fell below A reasonable standard which prejudiced the outcome of petitioner's trial And caused his Direct Appeal to be denied. (A.172-173).

The Adequacy of A pretrial investigation turns on the complexity of the case And trial strategy. <u>Strickland</u>, 466 U.S. 688. Here counsel's only strategy was being At the grandmother house (A-123) by not inquiring into the state's case through discovery And total Failure to subpoena potential defense witnesses establishs ineffectiveness of petitioner's trial counsel. <u>Berryman V. morton</u> 100 F.3d 1089 (1996) moreover, A reasonably effective Attorney would have broadened his investigation once he realized that petitioner had witnesses to support his defense that some else committed the crime (A.102-103) At trial. These witnesses viewed the same events that petitioner was on trial. petitioner raised the issue in his postconviction motion (A-132 ). Strickland, embraced ineffective Assistance of counsel Analysis to the extent that:

> "Strategic choices made After thorough investigation of law And Fact relevant to plausible options are virtually unchallengable; And strategic choice made After less than complete investigation are reasonable precisely to the extent that A reasonable professional judgements support the limitions on investigation. 104 s.ct. At 2066.

## Argument

Trial counsel Failed To _Properly_
_Investigate_ _and_ _subpoena_ _TWO_
_Crucial_ _Defense_ _witnesses_ who
would support Petitioner's story
That kenyon Horsey committed
The crime:

Prior to the commencement of trial Petitioner
Ralph Reed made several requests to his trial counsel
to interview and subpoena Jerome Reed and keyshawn
Banks. mr. J. Reed would have testified that he observed
kenyon Horsey shoot and kill Gregory Howard as
Howard drove away in his Ford Bronco near the
Little creek apartment complex. (see
Jerome Reed's Affidavit Attached hereto Exhibit "A" 102
to 103

Although petitioner is presently unable to locate and obtain an affidavit from Keyshawn Banks at this time, however petitioner expect that Mr. Banks will confirm that he possesses personal knowledge or that he was with State's witness Reshawn Jefferson on the night of the crime in question and Mr. Jefferson did not actually witness the shooting as he testified under oath at petitioner's trial that he observed petitioner standing close to the murder victim's Ford Bronco as the victim speeded away. (T. Tr. 65-68).

Thus, the trial court should appoint petitioner, the assistance of counsel for the limited purpose to locate, interview and obtain a sworn affidavit from Reshawn Banks for these postconviction proceedings pertinent to establishing the prejudice prong of Strickland's test on counsel's reasonableness for failure to investigate.

On page 2 of trial counsel's October 1, 2004, Response to petitioner's postconviction motion, counsel don't deny that petitioner never informed him about Mr. Banks and Mr. J. Reed. However, counsel only states: " I do not have recollection of Banks and J. Reed at the present time "; and that " surely if these were people who could exonerate the defendant we should be getting a new trial perhaps ".

Certainly counsel's Response support a reasonable probability that ~~Petitioner~~ did inform him about BANKS and J. Reed but counsel was too overburden with other areas of the trial preparation that he simply forget to interview and subpoena these two important witnesses.

Since Petitioner only have the benefit of J. Reed's Affidavit then it is a matter of principle that he limit the focus to the sworn averments by Mr. J. Reed while deferring any further comment about Mr. Banks' proposed deposition until such date and time a sworn Affidavit can be obtained from him.

Jerome Reed's Affidavit:

The sworn averments contained in J. Reed's Affidavit demonstrate that trial counsel's decision not to subpoena J. Reed as a defense witness was not reasonable and prejudiced petitioner's defense ~~that~~ someone else (Kenyon Hersey) committed the crime.

First, petitioner has a constitutional right under both State and Federal law to put on "evidence of the same character tending to identify some other person as perpetrator of the crime". See, D.R.E. 404(b) and <u>Jone v. Wood</u>, 207 F.3d 557, 562-63 (9th. Cir. 2000). The <u>Jones'</u> Court held that before evidence implicating another suspect can be admitted, "there must be such proof of connection with the crime, such as a train of facts or

circumstances as tend clearly to point out some one beside the accused as the guilty party". Id. AT 562. Furthermore the Jones' Court concluded that ..."because the other suspect evidence was admissible under Washington law, Jones has established Strickland prejudice" from counsel's failure to present such evidence at trial. Id. AT 563.

Second, evidence of petitioner ability and opportunity for a third person to commit a crime is not sufficient foundation for the introduction of other suspect evidence. Id. AT 562. Such evidence must be " coupled with other evidence tending to connect such other person with the actual commission of the crime charged". Id. However, a lesser foundational restriction applies to cases involving circumstantial proof of crime":

> [I]F the prosecution's case against the
> defendant is largely circumstantial, then
> the defendant may neutralize or overcome
> Such evidence by presenting sufficient
> evidence of the same character tending
> to identify some other person as the
> perpetrator of the crime.

See, Jones, 207 F.3d AT 562-63 (citing) STATE V. Clark, 78 Wash. App. 471, 898 P.2d 854, 858 (1995).

43

Applying this law to the facts of this case which is consistent with D.R.E 404(b), the averments contained in J. Reed's sworn affidavit that he witnessed Kenyon Horsey and Yvonne DeShields engaged in a conversation with the victim G. Howard at which time a hand to hand transaction of some sort was made and as the victim pulled (speeded) away fast in his Ford Bronco, Mr. J. Reed observed Mr. Horsey pull out a handgun and fired multiple shots at the fleeing vehicle. (see, J. Reed's affidavit Exhibit "A"). Mr. J. Reed also stated that he observed Mr. Horsey hand Ms. DeShields the handgun and she walked off quickly towards the Graveyard. (Affidavit page 2). Lastly, Mr. J. Reed stated that just prior to the shooting he observed Ms. DeShields get into the victim's vehicle and drive around the block before meeting up with Kenyon Horsey. Id.

In contrast Mr. Horsey and Ms. DeShields, two of the State's chief witnesses against Petitioner at trial, testified that petitioner committed the crime.

And the State's case was purely circumstantial consisting of four (4) witnesses' (including Ms. DeShields) testimonies which were all inconsistent with their geographic locations from where they claim to have witnessed the crime take place at a far distant through the foggy night inclement weather

conditions. (See, Section "B" on pages 5-7 of Letter To Judge Graves regarding proposed Amended claim of Trial Counsel's Failure To Request A Full Chance Instruction which point out many Of the inconsistencies in the STATE's Witnesses' testimony, Attached hereto as exhibit "B").

Thus, the exculpatory circumstantial evidence contained in J. Reed's affidavit is proof that Mr. Hersey and Ms. DeShields Are the actual perpetraters of the crimes to which Petitioner is convicted of committing.

To prove this connection even Further Ms. DeShields' own trial testimony is conducive on this Fact. For instance, Ms. DeShields stated (a) on the night of the crime she seen the victim's vehicle at the entrance way to Little Creek Apartments and that he passed her on the street by the graveyard (T.Tr. A-129); (b) that the victim occasionally speak to her and ask's her where to buy drugs (T.Tr. A-130); and (c) she had a bullet casing From the handgun that was used to shoot the victim (T.Tr. A-153 to 155). (compare these Factors From Ms. DeShields' testimony with the averments contained in J. Reed's affidavit).

Although Ms. DeShields testified that the victim asked her where he could buy drugs, however she never stated that she referred the victim to the Petitioner as a possible customer. A matter of Fact,

45

Ms. DeShields testified that she purchased drugs on the night of the crime but stated she did not buy it from the petitioner. (T. Tr. A-158 AND A-169).

Trial counsel should have argued to the jury with this evidence that it is only logical to assume that if the victim asked Ms. DeShields where to purchase drugs (and admitted that she actually purchase drugs that night also), that of course, she referred the victim to the same person she purchased her drugs from.

Petitioner contend (and Trial counsel should have argued) that that person Ms. DeShield referred the victim to for the purchase of drugs was in fact Kenyon Horsey which is supported by the sworn affidavit of J. Reed who eyewitnessed the entire transaction.

Therefore, under the Jones standard this evidence of the same character tending to identify some other person as the perpetrator of the crime was admissible under D.R.E. 404(b). In addition, petitioner point out that the prosecution theory (as argued in summation) that there was no other person who could have committed the crime, a theory that petitioner was entitled to rebut once the prosecution relied upon it. Jones, 207 F.3d at 563. Petitioner's trial counsel's failure to subpoena J. Reed as a witness to rebut the prosecution's theory (as petitioner's set

46.

forth herein) was unreasonable and sufficient to establish the prejudice needed under Strickland to create a reasonable probability in a different outcome but for counsel's errors.

(F). Trial Counsel's Failed To Use Inconsistencies In The State's Witnesses' Testimonies For Impeachment Purposes And To Support Petitioner's Defense That Someone Else Committed The Crimes :

Effective cross examination is essential to a defendant's right to a fair trial. Davis v. Alaska, 415 U.S. 308, 320, 94 S.CT. 1105, 39 L.Ed. 2d 347 (1974).

It is the "principal means by which the believability of a witness and the truth of his testimony are tested". Fensterer v. State, Del. Supr. 493 A. 2d 959, 963 (1988). Under Delaware Law, " the jury is the sole trier of fact, responsible for determining witness credibility and resolving conflicts in testimony". Pryor v. State, Del. Supr. 453 a.2d 98, 100 (1982). Jurors should have every opportunity to hear impeachment evidence that may undermine a witness' credibility.

47.

As shown in the previous argument above where trial counsel failed to investigate potential defense witnesses who would have **supported petitioner's theory** ~~that~~ **Mr. Horsey and Ms. DeShields were the actual** perpetrators of these crimes. Because Mr. Horsey and Ms. DeShields were two of the State's chief **witnesses against petitioner the evidence contained** in Jerome Reed's Affidavit (Exhibit "A") could have been used to impeach their credibility.

In addition to the above trial counsel failed to use the inconsistencies in Ms. DeShields' testimony to discredit Sarah Handy's testimony about witnessing **petitioner pointing and shooting a gun at the victim's vehicle.**

First, Ms. DeShields testified that on the night of the crime she went to a friend's (Herman Dark) house by the Deli and bought some drugs and something to drink. (T.Tr. A-127). She heard female voices saying: "I don't believe you'll do it and then heard gunshots over from where voices were coming from". (T.Tr. A-128). The female statement "I don't believe you'll do it", can be interpret as an utterance to shoot the victim. Ms. DeShields went on to state that the shots came from the area " down the creek in front of the bench". (T.Tr. A-128). When asked on cross examination : "who were the people sitting on the bench near the

creek by Little Creek Apartments entrance-way where the shooting occurred", Ms. DeShields replied ". That Sarah, Bacon and another unknown Female were sitting on a bench three or four feet away from **where the petitioner Ralph Reed was shooting the gun**" (T.Tr. A-138, 139, A-160, 161). However, Sarah (Handy) testified that she observed the entire shooting from her bedroom window at building #107. (T.Tr. A-188 to 190). **Petitioner note for the record that building #109 is facing away to the** side of the entrance way to Little Creek Apartments which makes it impossible for Ms. Handy to have witnessed the shooting from her bedroom window.

Ms. DeShields' testimony place Sarah Handy three or four feet away from the shooting. Thus, Jerome Reed's Affidavit place Ms. DeShields at the scene of the shooting as confirmed by her own trial testimony. The clear implication from Ms. DeShields' testimony regarding the unknown Female sitting on the bench with Ms. Handy was in fact Ms. DeShields herself.

The Question becomes - "which of the two females (DeShields or Handy) stated ' I don't believe you'll do it', meaning urging the person with the gun to shoot the victim"?

**In any event, Kenyon Horsey claims the gunman was the petitioner and petitioner said it was Mr. Horsey.**

The State's witnesses, as shown above, did not testify truthfully about who in fact possessed the gun and shot the victim. At the very least, the evidence revealed here shows beyond a reasonable doubt that Ms. DeShields and Ms. Handy were actual accomplices to the murder of Gregory Howard which should have **been explained to the jury and Court by petitioner's** trial counsel with a request for a full <u>Chance</u> instruction on all the lesser included offenses to First degree murder under 11 Del C. § 271 and 274 **as argued in Amended Claim "B" in the petitioner's** letter to Judge Graves (Exhibit "B").

Certainly, the testimonial evidence raises a **contrary conclusion about petitioner being the actual** perpetrator of these crimes and that the State's **witnesses has placed the blame on petitioner to conceal** their own direct involvement in the fatal shooting of the victim Gregory Howard.

Therefore, there is no way in which the failure of trial counsel to confront the State's witnesses with the grossly inconsistent testimony or use it as impeachment evidence and evidence that someone **other than petitioner committed these crimes can** be justified as sound trial strategy or a reasonable strategic choice. Thus, the prejudice prong of <u>Strickland</u> is established for counsel's trial errors

complained of herein Above in Arguments "E" and "F", And the Third Circuit Court's Ruling on ineffective assistance of counsel in Berryman v. Morten, 100 F.3d.1089 (1996) support Petitioner's claims for Habeas corpus relief. A contrary ruling would be totally unreasonable to the Federal Law governing the issue. Id. AT 1097-1102 (The Third Circuit reviewed each of Berryman's claims separately and found that counsel's performance strategy were unreasonable).

## V. Counsel's Errors And Omissions Prejudiced Petitioner In Several Other Ways

(I). The Franks Suppression Motion:

Although trial counsel filed a motion To Suppress Petitioner's statement to the police in which a hearing was conducted thereon as the STate's Response correctly notes. However, counsel did not file a request for a Suppression hearing under Franks v. Delaware, 438 U.S. 154, 98 S.CT. 2674, 57 L.Ed.2d 667 (1978) alleging that the police affidavit of Probable Cause in support of the arrest warrant against petitioner was based entirely on false information from all the STate's witnesses that the police knew or should have known was

inaccurate. But in reckless disregard for the Truth, where investigatory facts show that other people were involved in the commission of the murder and the fact that all the money was missing from the victim's wallet found on the seat of the vehicle which indicates that the victim could have been robbed while attempting to purchase drugs, however the police rush to judgment to arrest the **petitioner for the crime based upon an unsubstantiated theory that petitioner shot the victim for failing to pay for twenty ($20)** dollars worth of drugs. The police made no attempt to ask the victim's family (wife or brother) or his employee, Michael Hovatter, who was with the victim earlier that day, how much money he may have possessed on the night of the crime. (See Officer Holcumb's testimony about victim's wallet T.Tr. A-107 and employee Hovatter's testimony T.Tr. A-116). The victim, a successful business man, had no reason to steal or "rip-off" anybody for drugs or money.

Thus, the facts show that Ms. DeShields lured the victim Gregory Howard to Mr. Horsey for the purpose of purchasing drugs and they both robbed and killed him.

If trial counsel had filed a timely suppression motion under <u>Franks</u> based upon the facts

demonstrated in support hereto, it is a reasonable probability the trial court would have dismissed all charges due to invalid arrest warrant.

( J ). Failure To File Motion For Acquittal :

Contrary to what the STATE And Petitioner's trial Counsel stated in their Responses that there were no basis For a Judgment of Acquittal, the Petitioner contend otherwise. IF trial counsel had properly investigated, interviewed 2 Key witnesses, adequataly prepared For trial and represented or argued the case From the perspective in which Petitioner cited herein For counsel's ineffectiveness, then Petitioner was entitled to Judgment of Acquittal pursuant to Rule 29 of the Criminal Rules. Because the STATE's witnesses testified Falsely against Petitioner to cover up their own involvement in these crimes, Petitioner contend it would have been appropriate For the trial court to take the case From the jury and direct a verdict of Judgment of Acquittal in Petitioner's Favor. See, STATE V. Biter, 119 A.2d 894 (Del.Super. 1955). A Judgment of Acquittal denies the sufficiency of the evidence and challenges the STATE's right to go to the jury. Id. at 898. It is only where the STATE has offered insufficient evidence to sustain

a verdict of guilt that a motion for acquittal will be granted. Id.

Wherefore, this Court must determine had Petitioner's trial counsel properly argued the available evidence that someone other than Petitioner committed these crimes, under the circumstances would the trial court granted a motion for Judgment of acquittal had counsel filed a motion after the state rested its case. Counsel's errors and Accumulated omissions prejudiced the rights of Petitioner to receive due process of Law in a timely fashion throughout the trial proceedings in violation of the 14th Amendment to the United States Constitution.


(K). Petitioner was Denied of His
6th Amendment Right To
Effective Assistance of
Counsel On Direct Appeal:


On Appeal to the Delaware Supreme Court, trial counsel escalated his gross misconduct by using the incriminating statements he intentionally elicit from Ms. West on re-cross examination, Forcing her by threat of revoking her sentence of probation for drug convictions, to corroborate State's witness Kenyon Horsey's testimony that

Ms. West told him that petitioner shot the victim. (See, Proposed Amended Claim "A" on page 2 to 5 of Letter To Judge Graves Exhibit "B" attached). Also, Petitioner clarified his position on Ms. West's 3507 out-of-court statement allegedly made to Mr. Horsey herein above on page 5 to 7.

Trial counsel impermissibly referred to the incriminating testimony elicit from Ms. West and recited her confirmation to the statement that she told Mr. Horsey that petitioner shot the victim. (See Counsel's Opening Brief To The Supreme Court page 27 to 33).

The Delaware Supreme Court may have rejected petitioner's appeal issue relating to the trial court's instructions on the admission and limited use of Ms. West's allege prior out-of-court statement because it thought the statement was the proper product of 11 Del. C. § 3507(a) voluntariness. See, Hatcher v. State, Del. Supr. 337 A.2d 30 (1975) and State v. Rooks, Del. Supr. 401 A.2d 943 (1979), holding that 3507 statements must be voluntary product of free will. Also See, Supreme Court's Order Affirming petitioner's conviction Reed v. State, Del. Supr. Ct. No. 44, 2001 (Order July 12, 2001), Walsh, J. page 2 & 3 where it appear the court thought Ms. West's allege

out-of-court statement was voluntary and properly tested on direct and cross examinations for reliability and trustworthiness.

Had the Supreme Court known that trial counsel elicit the incriminating testimony on re-cross examination creating the inconsistency in Ms. West's continuous denial on direct and cross examinations of ever telling Mr. Hersey that **Petitioner shot the victim, then the Court may have ruled differently that counsel's misconduct violated Petitioner's 5th Amendment right against** self-incrimination and that because Ms. West was threaten with her prior drug conviction to Recant her denial of the out-of-court statement to Mr. Hersey, the voluntariness requirement pursuant to 11 Del.C.§ 3507 was not satisfied prior to admitting the statement under D.R.E. 801(d)(1)(A) and D.R.E. 613 (c) and (d). See United States v. Mannino, 212 F.3d 835, 845 (3d. Cir. 2000) (counsel's failure to raise the sentencing issue on direct appeal prejudiced defendant because the Court would have vacated sentence had the claim been raised).

The Due Process Clause of the 14th Amendment guarantees the right to effective assistance of Counsel on a first Appeal. See Evitts v. Lucey,

469 U.S. 387, 396-99 (1985). If counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing", as is the case here, the adversarial process itself becomes presumptively unreliable. See, United States v. Cronic, 466 U.S. 648, 659 (1984). Trial Counsel's errors or misconduct in the case at bar acting as a second prosecutor constituted denial of assistance of counsel and court need not establish actual prejudice. See, Rickman v. Bell, 131 F.3d 1150, 1156-60 (6th. Cir. 1997).

Therefore any subsequent Jury Instructions for consideration of Ms. West's allege 3501 Statement were constitutionally infirm and plain error.

<u>Conclusion</u>

Wherefore there exist an overwhelming probability that but for trial counsel's accumulated errors and omissions in the pretrial stage, at trial and on appeal the Courts would have entertained a different result.

Thus, since <u>Strickland</u> prejudice is satisfied on one or all counsel's trial errors complained of herein and attached exhibits "A", "B" and "C", the resulting convictions and sentences imposed upon petitioner for murder and weapon offenses are unworthy of confidences in their outcomes. Petitioner is entitled to a new trial as appropriate Habeas corpus relief.

## Argument

XI. The state court Violated The Federal constitutional by Not concluding That petitioner's Trial counsel Deprive Him of His 6th Amendment Right To Effective Assistance of counsel For Failing To properly Investigate And subpoena Two crucial Defense witnesses who would support petitioner's story That kenyon Horsey committed The crime

## Scope And Standard of Review

whether or not trial counsel Failed to investigate properly is reviewed under the performance and prejudice test of Strickland V. Washington 466 U.S. 668 (1984). The standard and scope of Review Applicable to this issue is whether the state court abused its broad discretion in denying that petitioner's Strickland claim in the postconviction relief proceeding. Shockley v. State 565 A.2d 1373 1377. Del. (1989).

## Argument

Prior to the commencement of trial petitioner made several requests to his trial counsel to interview And subpoena Jerome Reed And keyshawn Banks. mr. J Reed would have testified that he observed kenyon Horsey

58

Shoot and Kill Gregory Howard As Howard drove away in
his Ford Bronco Near the Little Creek Apartment complex.
(See Jerome Reed's Affidavit A-102 to 103).

Although petitioner was unable to locate and obtain an
Affidavit From Keyshawn Banks. however petitioner expect
that Mr. Banks will confirm that he possess personal knowledge
that he was with State's witness Reshawn Jefferson on
the night of the crime in Question and that Mr. Jefferson
did not actually witness the shooting as he testified to
under oath at petitioner's Trial that he observed petitioner
standing close to the murder victim's Ford Bronco as the
victim speed away. (T.Tr. Vol. B, pg. 68, A-22, 23).

            a. The Trial Court and State's Attack
               On Jerome Reed's Credibility was
               Improper

     At the Evidentiary Hearing the trial court and
State wrongfully attacked and discredited Jerome
Reed's Affidavit with unsubstantiated accusations
that Mr. Reed and petitioner Fabricated the Facts while
housed in the same cell together at the Delaware
Correctional Center (DCC). To support these False
Attacks on Mr. Reed's and petitioner's credibilities the

trial court and STATE's attorney relied on the testimony
from Sonya Lewis, a DCC employee, who testified that
**She assigns inmates to cells at DCC.** Petitioner **contend**
that Ms. Lewis Falsely stated that from May 10, 2004 to
**June 22, 2004 the** petitioner **and J. Reed were cellmates
with Jerome on the top bunk and** petitioner **on the**
bottom bunk. (See Super. Ct. Decision pg. 26 at par 3
(A-146). Ms. Lewis based these false conclusions off of
a computer print-out sheet and a personal index card.
(See Evidentiary Hearing Transcripts pg. 125 to 135 Lewis
(A-105 to A-105). However these records are not accurate.

    **Petitioner contend that at all times prior to obtaining**
Jerome Reed's Affidavit he was housed in building 22
and Mr. J. Reed was housed in building 23. The Daily
Log Books for these specific units (buildings 22 and
23) will verify the actual dates and times when
**petitioner and Mr. Reed enter these units.** Therefore
before this court rule on this issue it should subpoena
the Daily Log Books for buildings 22 and 23 of
the Maximum Housing Unit (The MHU) for the months
of May 2004 to June 22, 2004, the dates the state
**Falsely claim J. Reed and** petitioner **were housed together
in building 22 and same cell.**

    The State also attack J. Reed's credibility with
testimony from STATE Police Officer, Matthew Zolper.
(See Super. Ct. decision pg. 25, A-145).

Mr. Zolper merely testified that J. Reed was a past confidential informant who could no longer be trusted or relied upon. ( See Zolper Testimony Evid. Hr. Tr. pg. 139 to 143 ( A-116 to A-120).

However petitioner remind this court that Ms. Lewis and Mr. Zolper are the arm of the State and owes a Bonding interest to the State. Outside these two State Official witnesses, the only other attacks on the averments contained in Jerome Reed's Sworn Affidavit by the State is that : "Since Mr. Reed and petitioner don't know each other then it is highly suspicion how petitioner obtained Mr. Reed's Affidavit out of the blue. ( See Super. Ct. decision par. 1. pg. 26 ( A-146 ). This minor discrepancy can easily be explained. An inmate Writ Written by the name James Riley who assisted petitioner with filing his postconviction and who was housed in building 23 with Jerome Reed became aware through prior unrelated legal discussions with Mr. Reed that Mr. Reed possessed material information concerning petitioner's case. ( See Affidavit of J. Riley. A-153 to 155 ). Mr. Riley provided Mr. Reed with the necessary last names of the people involved in petitioner's case in which Mr. Reed only knew on first name basis. In no way did Mr. Riley provide Mr. Reed with any other facts concerning the petitioner's case. The fact that Mr. Reed may have gotting someone else to re-write his

Affidavit is not proof he is not the author of the sworn statements therein in which he signed personally under the penalty of perjury for any false statements sworn to therein. (See Super. CT. decision pg. 26, par 5 ( A-146 ).

Lastly, the STATE attack petitioner's credibility by claiming that petitioner first advanced an alibi that he was asleep at his Grandmother's house when the shooting occurred, but subsequently at trial during his testimony petitioner changed his alibi and now state he was present at the scene of the crime and that another suspect, Kenyon Horsey, did the actual shooting. ( See Super. CT. decision pg. 13 and pg. 4, par. 3 ( A-133      ).

The petitioner continue to deny that he never agreed with his trial counsel on advancing the first alibi defense. His trial counsel acted on his own with this alibi. And the STATE cannot and have not produced any evidence that petitioner supported his trial counsel's defense strategy. Thus this is the very reason why petitioner is claiming his trial counsel provided ineffective assistance. (See page 3-4 of Super. CT. decision Ground 2 where that statement concerning the Alleged alibi at petitioner's grandmother's house originated (A-123,124)

The trial Court stated at page 27 of its decision ( A-147) Quote: in reviewing the testimony of the trial witnesses, there is a harmonious, consistent report of what occurred; that defendant, mr. Bacon and their lady friends were at the utility box near

the entrance of Little Creek Apartments; and Mr. Bacon
and defendant serviced the drive-by customers as to their
drugs needs; that defendant was flammed or ripped off
by a customer who tried to drive away without paying.
And defendant pulled his firearm and shot him. Unquote,
the trial court uses Mr. Bacon and the lady friends
interchangeably with the crime as though they eye-
witnessed the shooting incident. However, all of these
people testified that they did not see who shot the victim.

        Contrary to what the trial court concluded, the four
(4) people who claim they witness petitioner shoot the
victim was not ... a harmonious, consistent report
of what occurred. Herein below petitioner point out the
fatal inconsistencies (perjury) in the prosecution's four
(4) witnesses' testimony against him.

                b. Materiality of Jerome Reed's
                        Affidavit

        The sworn averments contained in J. Reed's affidavit
demonstrate that trial counsel's decision not to subpoena
J. Reed as a defense witness was not reasonable and
prejudiced petitioner's defense that someone else
(Kenyon Horsey) committed the crime.

        First, petitioner has a constitutional right under
both state and federal law to put on "evidence of
the same character tending to identify some other

63

person as perpetrator of the crime". See D.R.E 404 (b) and Jones v. Wood, 207 F.3d 557, 562-63 (9th cir. 2000).

The Jones' court held that before evidence implicating another suspect can be admitted, "there must be such proof of connection with the crime, such as a train of facts or circumstances as tend clearly to point out some one beside the accused as the guilty party". Id. at 562. Furthermore the Jones' court concluded that . . . "because the other suspect evidence was admissible under Washington law, Jones has established Strickland prejudice", from counsel's failure to present such evidence at trial. Id. at 563.

Second, evidence of motive, ability and opportunity for a third person to commit a crime is not sufficient foundation for the introduction of other suspect evidence. Id. at 562. Such evidence must be "coupled with other evidence tending to connect such other person with the actual commission of the crime charged". Id. However a lesser foundational restriction applies to cases involving circumstantial proof of crime :

> If the prosecution's case against the defendant is largely circumstantial, then the defendant may neutralize or overcome such evidence by presenting sufficient evidence of the same character tending to identify some other person as the perpetrator of the crime.

See, Jones, 209 F.3d at 562-63 (citing) State v. Clark,

78 Wash. App. 471, 898 P.2d 854, 858 (1995).

Applying this Law to the Facts of this case which is consistent with D.R.E 404(b), the averments contained in J. Reed's sworn Affidavit the he witnessed Kenyon Horsey and Yvonne DeShields engaged in a conversation with the victim G. Howard At which time A hand to hand transaction of some sort was made and as the victim pulled (speeded) Away Fast in his Ford Bronco, Mr. J. Reed observed Mr. Horsey pull out a handgun and Fired multiple shots At the Fleeing vehicle. (See J. Reed's Affidavit A-102, A-103). Mr. Reed also stated that he observed Mr. Horsey hand Ms. DeShields the handgun and she walked off Quickly towards the Graveyard. (Affidavit pg 2 A-103)

Lastly, Mr. J. Reed stated that just prior to the shooting he observed Ms. DeShields get into the victim's vehicle And drive Around the block before meeting up with Kenyon Horsey. Id.

In contrast Mr. Horsey and Ms. DeShields, two of the State's Chief witnesses Against petitioner At trial, both testified that petitioner committed the crime. Mr. Horsey accused a third person, Sharnelle West, of telling him that petitioner "had shot the man" (victim) in which Ms. West was coerced by petitioner's own trial Counsel and trial Judge into corroborating that incriminating Accusation. (See Argument XII herein below beginning At page 75 )

The State's case was purely circumstantial consisting of four (4) witnesses' (including Ms. DeShields) testimonies which were all inconsistent with their geographic locations from where they claim to have witnessed the crime take place at a far distant through the foggy night inclement weather conditions over fifty or more yards away. The total of Seven (7) witnesses DeShields (T.Tr.Vol.A, pg.159, A-15), Jefferson (T.Tr.Vol.B, pg.66, A-22), Hopkins (T.Tr.Vol.B, pg.32, A-21), Dixion (T.Tr.Vol.B, pg.150, A-24), Mrs. Reed (T.Tr.87, A-62) Officer Holcumb (T.Tr.Vol.A, pg.99 & 109, A-3, 4), and Officer Marvel (T.Tr.Vol.C, pg.60, A-4a), all testified that it was extremely foggy and damp the night of the incident. Also Jerome Reed testified at the evidentiary Hearing that it was "really foggy out". (A-104).

**There was evidence** ~~that both~~ **Mr. Horsey and petitioner possessed**. .380 caliber handguns of the same type used in the shooting a couple days before. (T.Tr.Vol.C, pg.224 Horsey A-61 and Vol.E, pg.12 Travis Johnson A-63).

**In summation petitioner's trial counsel pointed** out in his closing arguments that it is mathematically impossible for State's witnesses Juanita Hopkins and Sarah Handy to see the shooting incident from inside their apartment windows going on around the corner at the entrance way. (T.Tr.Vol.E, pg. 168 to 170 (A-64 to A-66).

66

Thus, the exculpatory circumstantial evidence contained in J. Reed's Affidavit is proof that Mr. Horsey and Ms. DeShields are the actual perpetrators of the crimes to **which Petitioner was Falsely accused by these States** witnesses.

To prove this connection even Further Ms. DeShields' own trial testimony is conducive on this Fact. For instance, Ms. DeShields stated: (a) on the night of the crime she seen the victim's vehicle at the entrance way to Little Creek Apartments and that he passed her on the street by the graveyard (T. Tr. Vol. A, pg. 129, A-7.); (b) that the victim occasionally speak to her and ask's her where to buy drugs (T. Tr. Vol. A, pg. 130, A-8.); and (c) she had a bullet casing from the handgun that was used to shoot the victim (T. Tr. Vol. A, pg. 153 to 155, A-11 to A-13). (Compare these Factors from Ms. DeShields' testimony with the averments contained in J. Reed's Affidavit).

Although Ms. DeShields testified that the victim asked her where he could buy drugs, however she Never stated that she referred the victim to the **Petitioner as a possible customer. A matter of Fact,** Ms. DeShields testified that she purchased drugs **on the night of the crime but stated she did not buy it from the Petitioner.** (T. Tr. Vol. A, pg. 158 and 169 (A-14, A-17).

The counsel should have argued to the jury with this evidence that it is only logical to assume that if the victim asked Ms. DeShields where to purchase drugs (and admitted that she actually purchase drugs that night also), that of course, she referred the victim to the same person she purchased her drugs from.

**Petitioner** contend (and trial counsel should have **argued**), that that person Ms. DeShield referred the victim to for the purchase of drugs was in fact Kenyon Horsey which is supported by the sworn affidavit of J. Reed who eyewitnessed the entire transaction.

C. Ms. DeShields' Testimony Show That State's Witness Sarah Handy Was Involved In This Crime

In addition to the above trial counsel failed to use the inconsistencies in Ms. DeShields' testimony to discredit Sarah Handy's testimony about witnessing **Petitioner pointing and shooting a gun at the victim's vehicle**.

First, Ms. DeShields testified that on the night of the crime she went to a friend's (Herman Dark's) housed by the Deli and brought some drugs and something to drink. (T.Tr.Vol.A, pg. 129, A-5   ). She heard female voices saying: "I don't believe you'll

do it and then heard gunshots over from where voices were coming from". (T.Tr.Vol.A, pg. 128, A-6    ). The Female statement " I don't believe you'll do it", can be interpret as an utterance to shoot the victim. Ms. DeShields went on to state that the shots came from the area "down the creek in front of the bench". (T.Tr.Vol.A, pg. 128, A-6 ). When asked on cross-examination : "Who were the people sitting on the bench near the creek by Little Creek Apartments entrance-way where the shooting occurred", Ms. DeShields replied : " That Sarah, Bacon and another unknown female were sitting on a bench three or **Four Feet away From where petitioner was shooting** the gun". (T.Tr.Vol.A, pg. 131, 132, 160, 161 (A-9 to 10 and A-16 to 17). However, Sarah (Handy) testified that she observed the entire shooting from her bedroom window at building #107. (T.Tr.Vol.A, pg. 188 to 190, A-18 to A20).

**Petitioner** note again for the record the building #107 is facing away to the side of the entrance way to Little Creek Apartments which makes it totally impossible for Ms. Handy to have witnessed the shooting from her bedroom window.

Ms. DeShields' testimony place Sarah Handy three or four feet away from the shooting. Thus, Jerome Reed's Affidavit place Ms. DeShields at the scene of the shooting with Kenyon Horsey as

69

confirmed by her own trial testimony. The clear implication from Ms. DeShields' testimony regarding the unknown female sitting on the bench with Ms. Handy was in fact Ms. DeShields herself.

Thus, the question becomes - "which of the two females (DeShields or Handy) stated 'I don't believe you'll do it', meaning urging the person with the gun to shoot the victim"? **This is the question petitioner's** trial counsel should have investigated prior to trial and proffered as a primary defense during trial. The question and answer about who actually shot and killed the victim **Gregory Howard were Never resolved at petitioner's trial.**

Therefore, under the Jones standard (which is very similar to the sufficiency of evidence test) this evidence of the same character tending to identify some other person as the perpetrator of the, "such as a train of facts and circumstances demonstrated herein above, was admissible under D.R.E 404(b). **In addition, petitioner** point out that the prosecution's theory (as argued in summation) that there was no other person who could **have committed the crime, a theory that petitioner was** entitled to rebut once the prosecution relied upon it. Jones, 207 F.3d at 563. **Petitioner trial counsel's** failure to subpoena J. Reed as a witness to rebut the prosecution's theory **(as petitioner set forth herein)** was grossly unreasonable and sufficient to establish

the prejudice needed and required under Strickland to create a reasonable probability in a different outcome but for counsel's errors. This conclusion is premised upon the following summary:

The State's witnesses, as shown above, did not testify truthfully about who in fact possessed the gun and shot the victim. At the very least, "the train of evidence" according to Jones revealed here shows beyond a reasonable doubt that Ms. DeShields, Ms. Handy and Mr. Horsey were actual accomplices to the murder of Gregory Howard which should have been explained to the jury and court by petitioner's trial counsel with a request for a full Chance instruction on all the lesser included offenses to first degree murder under 11 Del.C. § 271 and 274, e.g. second degree murder 11 Del.C. § 635, manslaughter 11 Del.C. § 632 or criminally negligent homicide 11 Del.C. § 631. Chance v. State, 685 A.2d 351.

Certainly, the testimonial evidence raises a contrary conclusion about petitioner being the actual perpetrator of these crimes and that the State's witnesses has placed the blame on petitioner to conceal their own direct involvement in the fatal shooting of the victim Gregory Howard.

The circumstances of petitioner's case is identical to what happen in Kyles v. Whitley, 514 U.S. 419 (1995), where the actual perpetrator of the crime

provided the investigating police officer with all the evidence and information that led to Kyles arrest and conviction. In reversing Kyles' conviction the Supreme Court held at 514 U.S. 419, 454 (That the verdict was not worthy of confidence because the undisclosed evidence would have entitled a jury to find that the eyewitnesses were not consistent in describing the killer, that two out of the four witnesses testimony were unreliable, that the most damning physical evidence was subject to suspicion, that the investigation that produced it was insufficiently probing, and that the principal police witness was insufficiently informed and candid).

Instead of advancing the available same character defense theory that someone else committed the crime, however counsel unreasonably advanced the weak **alibi defense that petitioner was asleep at his grandmother's** house when the shooting occurred, a defense that **petitioner did not approve of from the outset of the trial.**

Wherefore there is no way in which the failure of trial counsel to confront the State's witnesses with their grossly inconsistent perjured testimonies or use it as impeachment evidence and Brady evidence that **someone other than petitioner committed these crimes** can be justified as sound trial strategy or a reasonable strategic choice. Thus, the prejudice prong

72.

of _Strickland_ is established. For counsel's trial errors
complained of herein above. The Third Circuit Court's
Ruling on ineffective assistance of counsel in _Berryman_
_v. Morton_, 100 F.3d 1089 (1996) **Support · Petitioner's claims**
For postconviction relief based upon _Jone v. Wood_, 207
F.3d 557 (9th Cir. 2000). A contrary ruling would be
totally unreasonable to the Federal Law governing
this issue. Id. 1097-1102 (The Third Circuit reviewed
each of _Berryman's_ claims separately and Found that
counsel's performance strategy were unreasonable).

## Argument

XII. The State court Violated The Federal constitutional
     by <u>Denying petitioner's Claim That His Trial counsel
     Improperly opend The Door For The State To Introduce
     ms. West's 3507 Statement</u> Violated The petitioner's 5Th
     Amendment Right Against Self-Incrimination And
     6Th Amendment Right To Effective Assistace of Counsel

### Standard And Scope Of Review

Whether the trial court's decision to Admit evidence
Under the Delaware Rules of Evidence is govern by the Abuse of
discretion Standard. <u>Smith V. State</u> 669 A2d 1 Del supr.(1995). This
court review ineffective assistance claims under the totality of
the circumstances Standard set Forth in <u>Renai V State</u> 450 A2d
382, 384 (Del. 1982)

### Argument

At the petitioner's trial prosecution called Keyon Horsey As A
Witness to testify About A prior out-of-court hearsay oral statement
Allegedly made to him by Sharnelle West that the petitioner had Shot
the man (Victim). (T. Tr. Vol. C pg. 221, 222 (A-59 to A-61 Horsey). The
prosecution sought to introduce ms. West's prior statement
Under 11 Del. C. § 3507 which requires that the witness (ms. West)
must testify on direct examination concerning both the
events perceived or heard And the out-of-court statement.

See Ray V. State Del. Supr. 587 A.2d 439 (1991). As in Ray,
the declarant ms. west did testify at trial but refused
to testify about events perceived, denying that she
ever told Kenyon Horsey that the petitioner shot
the victim. T. Tr. Vol. B. pg. 160 thru 192 West's direct,
cross and redirect testimony A-25 thru A-58).
At this point the state's foundation for introducing
ms. west's 3507 out-of-court statement through mr.
Horsey's testimony was improper because ms. west
refused to testify about the events she perceived.
(See, Super court's decision pg. 16, A-136).
petitioner's trial counsel then save the day for the
prosecution by re-calling m.s. west back to the witness
stand to impeach her credibility although she test
ified in petitioner's favor on direct and cross
examination. Then counsel impermissibly directed
the state's attention to ms. west's prior criminal
record which indicates that they should use it to
threaten ms. west to change her previous testimony
when re-called to the witness stand.
T. Tr. Vol. B. pg. 183 to 187, (A-48 to A-51), when ms. west
failed again to admit on cross examination that
she told mr. Horsey that petitioner shot the victim
(T. Tr. Vol. B, pg. 187 to 189, A-51 & A-52) and after trial counsel
concluded his cross of ms. west who testimony was
favorable, counsel told the court that regardless of its

ruling on the 3507 requirements he is going to
impeach ms. west. (T. Tr. Vol. B. pg. 189 to 191, A-52 to
A-54).

However, Again, on re-direct examination ms. west
provided Favorable testimony For the deFense in
which she continue to deny the oral out-oF-court
statement to mr. Horsey that petitioner had shot
the victim. (T. Tr. Vol. B, pg. 191, 192  A-54, 55).
At this point trial counsel should have requested the
trial court to declare a mistrial due to the jury being
over exposed to the improper and unsubstantiated 3507
incriminating statement by mr. Horsey which ms.
west denies ever making to him. Instead, trial
counsel recalled ms. west back to the witness stand
the next day For re-cross examination at which time
ms. west testiFied diFFerently And now admitted to
telling mr. Horsey that petitioner had shot the victim.
T. Tr. Vol. D, pg. 15-16, (A-57, A-58)
ms. west's Allege prior-out-oF-court statement to mr.
Horsey was corroborated by ms. west on re-cross
examination by petitioner's own trial counsel (A-57, 58)
which satisFied the "consistent or inconsistent" elements
oF § 3507, however the trial court did not admit ms. west's
prior statement under § 3507 because the proponent party
seeking to introduec the allege evidence was the
prosecution, not the defense. For this reason the trial
court (who also participated in this illegal conduct)

Admitted ms. west's coerced out-of-court prior statement under D.R.E. 801(d)(1)(A) and D.R.E 613(c) &(d) For impeachment purposes only to be weighed against the credibility of both ms. west and mr. Horsey. (see Trial court's Jury Instructions T. Tr. Vol. D. pg. 11 thru 14 (A-149 to A-152).

Although ms. west's coerced out-of-court statement was admitted under Rule 801 and 613, it is still the product of § 3507 and the requirement that it be Voluntary is still govern by § 3507 (a) (e.g. it must be Voluntary consistent or Voluntary inconsistent).

This gross misconduct by the trial court, the prosecution and petitioner's counsel violated petitioner's 5Th Amendment Right Against Self-incrimination prohibiting a defendant From offering evidence Against him or her self, because the state, the court and petitioner's counsel intentionally elicit (or Forced) ms. west to corroborate mr. Horsey's unsubstantiated Allegations that petitioner had shot the victim Also defy the principle of § 3507 that the prior statement must be Voluntary, and Furthermore provided the otherwise impermissible prerequisite Foundation For the prosecution's introduction of ms. wests 3507 statement through mr. Horsey's testimony (who is the actual declarant of the incriminating statement).

The Delaware Supreme court expound on this very problem in Smith v. State 669 A.2d 1 (Del. Supr. 1995)

(If he cross examined Anderson About the statement before it had been offered As evidence, smith would be calling the Jury's Attention to A damning statement made by A witness

77

who testified in his favor on direct examination).
Id. at 7-8.

This sort of misconduct by counsel "... must rank as
a striking 'instance of ineffective assistance of
counsel." See Berryman v. morton, 100 F.3d 1089, 1099-1100
(3d cir. 1996) (Berryman's attorney "proceeded relentlessly
to elicit the irrelevant testimony that was so damaging
to his"). Id. at 1100.

To add to the already prejudicial effect, since the jury
was instructed to weigh the credibility of ms. West and
mr. Horsey regarding whether or not the out-of-court state
ment: that "petitioner shot the victim," was made, then trial
counsel's actions on re-cross examination impermissibly
weighed in favor of mr. Horsey's credibility and since ms.
West confirmed the statement the jury could construed
such admission by ms. West as substantive evidence that
she actually saw petitioner shot the victim as the prosecut
ion contend she did on direct and re-direct examination
and which is the essential element charging petitioner with
First degree intentional murder. (T. Tr. Vol. B. pg. 180 to 184 and 192
A-45 to 49 and A-55 to 58).

Lastly, the trial court abused its discretion in admitting
this evidence because 5.3507(a) require that an out-of-
court statement be voluntary. The clear implications in
the trial record show that ms. West was threaten with her
prior drug conviction and probational sentence (subjected
to being revoked by the court), to recant her previous
favorable testimony and admit that she now had told

mr. Horsey that the petitioner shot the victim. Under Delaware Law a statement that was prompted by mental or physical coercion, or by duress or intimidation, is not voluntary because it was not the product of a free will. See, State V. Rooks, Del. supr. 401 A.2d 943 (1979). Wherefore For the reasons set forth in the arguments above this court shall reverse the superior court's octber 5, 2005 decision denying postconviction relief and grant the petitioner a new trial on his Habeas corpus.

## Argument

XIII. The state court Violated The Federal
Constitional by Trial counsel Failed
To Request A Full chance Instruction
on The Lesser Included offenses of
murder As established in chance V.
State 685 A2d 351 (1996)

## Scope And Standard of Review

Standard and scope of Review Full chance
Instruction on the lesser included offenses
of murder. chance V. State 685A2d 351 (1996)

## Argument

Trial counsel should have requested the trial court to give
the jury a Full chance V. state 685A2d351 (1996) instruction on
the lesser included offenses of murder. There was circumstan
tial evidence introduced at trial that kenyon Horsey and
petitioner were confederate in a conspiracy to sell Illegal
drugs. Trial court permitted the probecution to introduce the prior
drug dealing activities through the testimony of kenyon Horsey
pursuant to D.R.E 404(b) as probative Value to Show motive and
intent because there was evidence that the victim was
Fatally shot during a drug transaction (Tr.c-222,223 Horsey). There was

Evidence that both Horsey And Petitioner Reed possessed 380 caliber handguns of the same type used in the shooting A couple days before. (Tr. C - 224  Horsey And E-12 Travis Johnson). Also, Horsey was in the vicinity at the time of the shooting. (Tr. C-220 ). In contrast, Horsey blame Petitioner For the Shooting And the Petitioner contend that Horsey committed the crime.

In summation Petitioner's trial counsel pointed out in his closing Argument's that it is mathematically impossible For State's witnesses Juanita Hopkins And Sarah Handy to see the shooting incident From inside their Apartment windows going on Around the corner at the entrance way. (Tr. E-168 to 170 ). certainly Hopkins And Handy would need A hovertelescope to witness the shooting incident Around the Corner From Apartment window. Likewise, it was impossible For the other State witnesses to see (let long positively identify) the gunman over Fifty (50) or more yards Away on of the Foggiest nights. The total of seven (7) witnesses Desheilds (Tr.A-159 ). Jefferson (Tr. B- 66 ) Hopkins (Tr. B 32). Dixion (Tr. B-150), mrs. Reed (Tr.87). officer Holcumb ( Tr. A-99, A-109 And officer marvel (Tr.C- 60 ). All testiFied that it was extremely Foggy And damp the night of the incident. Under these exceptional circumstances And despite the State's decision to promise Horsey immunity From prosecution For the illegal drugs conspiracy. the principle oF Accomplice liability still Applies pursuant to 11 Del. C. § 271 And 274 For conduct reasonably Foreseeable or Facilitated. See Johnson V. State, 711 A2d 18. 30-31 (Del. supr. 1998).

## Argument

VX. The state court Violated The Federal constitutional
by Trial counsel Fail To Raise Brady Violation That
The prosecution Failed To INForm Him that they Had
Implicitly promised mr. Horsey Immunity From
prosecution on The murder charge As An accomplice
Brady V. maryland 373. US.83.83 S.Ct. 1194. 10. L. Ed 2d 215
(1963) Violated petitioner 6Th amendment Right

## Scope And Standard oF Review

Standard And scope oF Review Brady Violation
Prosecution Failed to inForm petitioner that
they implicitly promised mr. Horsey immunity
From prosecution on the murder charge As An
Accomplice to petitioner in Violation OF Brady
V. maryland 373 U.S.83.83 s.ct. 1194, 10 LEd. 2d 215
(1963).

## Argument

The petitioner contend that the prosecution Failed to inForm
him that they had implicitly promised mr. Horsey immunity
From prosecution on the murder charge As An Accomplice
to petitioner in Violation oF Brady V. maryland 373 US. 83
83 sct. 1194, 10 L. Ed. 2d 215 (1963). when the Brady issue was
addressed by the trial court, the proscution stated that

they informed mr. Horsey (quote).. "This is a murder case and if you tell us anything about your drug involvement I'm not here to prosecute you for drug charges, I am here prosecuting a murder case." (unquote)(Tr. C-230, 231 ). And when Petitioner's trial counsel attempted to question Horsey on cross examination about any promises the state made to him for his testimony against Petitioner, mr. Horsey failed to disclose the full terms of the deal the prosecution made with him. (Tr. C-238 to 240 ). Thus the state's actual words to mr. Horsey that... I'm not here to prosecute you for drug charges, I am here prosecuting a murder case," implies an implicit promise not to prosecute Horsey on the murder charge if he testify against Petitioner regarding their drug activities which was introduced as evidence of motive for shooting the victim that reasonably make Horsey an accomplice to the murder if he's there with Petitioner as Petitioner contend he was.

Thus, the information of Horsey's promise not to be Prosecuted as an accomplice to the murder had the potential to undermine his credibility by exposing his implicit motive or bias. This improper plea bargaining policy by the state which implicitly deal out promises for future leniency to circumvent a defendant's 6th amendment right to effective cross examination of the adverse witnesses against him has been condemned by the Delaware supreme court in JACKSON v. State, 770 A2d 506 (Del. supr. 2001). Because mr. Horsey was the state's primary witness to establish intent and motive

For the murder, coupled with the Fact that Petitioner had
Present some evidence that Horsey had actually committed
the crime, thus impeaching Horsey's credibility with the
Full details of the implicit promises could reasonably be
taken to put the whole case in such a different light
as to undermine confidence in the verdict. Jackson 770
A2d at 514-516.

Petitioner conclude by asking the court to correct the obvious
injustices that are perpetuated against him by trial counsel
The Prosecution and the court during jury selection and
through out trial.

Argument

XV. The State court Violated The Federal Constitutional
by Trial Counsel Fail to Filed a motion To suppression
hearing That police affidavit of Probable cause
And Arrest warrant was Based on False Information
As established in Franks V. Delaware 438 US. 154. 98
S.ct. 2674. 57 L:Ed2d 667 (1978)

Scope And Standard of Review

Standard and scope of Review trial counsel
did not File a request For a suppression
hearing under Franks V. Delaware 438 US. 154.
98 S.ct. 2674. 57 L.Ed. 2d 667 (1978) Police
affidavit of Probable cause in support of
the arrest warrant against petitioner was
entirely on False information.

Argument.

Although trial counsel Filed a motion To suppress petitioners
statement to the police in which a hearing was conducted
thereon as the State's Response correctly notes. However
counsel did not File a request For a suppression hearing
Under Franks v. Delaware 438 U.S. 154. 98 S.ct. 2674. 57 LEd. 2d
667 (1978). alleging that the police affidavit of Probable
cause in support of the arrest warrant against

Petitioner was based entirely on False information. From all the state's witnesses that the police knew or should have known was inaccurate. But in reckless disregard for the truth. where investigatory Facts show that oter people wer involved in the commission of the murder. And the Fact that all the money was missing From the Victim wallet Found on the seat of the Vehicle which indicates that the victim could have been robbed while attempting to purchase drugs. however The Police rush to judgment to arrest the Petitioner For the crime based upon an unsubstantiated theory that Petitioner shot the victim For Failing to pay For twenty (20) dollars worth of drugs. The Police made no attempt to ask the victim Family (wiFe or brother) or his employee, Michael Hovatter, who was with the Victim earlier that day how much money he may have possessed on the night of the crime (see officer Holcum's's testimony about Victim wallet T.Tr. A-107) And employee Hovatter's testimony T.Tr. A-116). The victim, a successful business man, had no reason to steal or "rip-off" anybody For drugs or money.

Thus, the Facts show that ms. Deshields lured the victim Gregory Howard to mr. Horsey For the purpose of purchasing drugs and they both robbed and killed him.

If trial counsel had Filed a timely suppression motion under **Franks** based upon the Fact's demonstrated in support hereto it is a reasonable Probability the trial court would have dismissed all charges due to invalid arrest warrant.

## Argument

XX. The state court Violated The Federal constitutional by Trial counsel Failure To File motion For Acquittal Denies The sufficiency of The Evidence That Trial proceeding In Violation of The 14th Amendment To The United States constitution As established in <u>state V Biter</u> 119 A2d 894 Del. super (1955)

## Scope And Standard oF Review

Standard And scope oF Review to take the case From the jury And direct A Verdict oF Judgment oF Acquittal In petitioner Favor. see <u>stat v. Biter</u> 119 A2d 894 (Del. super. 1955). A Judgment oF Acquittal denies the sufficiency oF the Evidence And challenges the states right to go to the jury. Id At 898.

## Argument

Contrary to what the state And petitioner trial counsel stated In their Responses that there were no basis For A Judgment oF Acquittal. the petitioner contend otherwise. IF trial counsel had properly investigated. interviewed 2 key witnesses Adequately. prepared For trial And represented or argued the case From the perspective in which petitioner cited herein For counsel's ineffectiveness, then petitioner was entitled

87

To Judgment of Acquittal Pursuant to Rule 29 of the criminal Rules. Because the State's witnesses testified falsely against Petitioner to cover up their own involvement in these crimes, Petitioner contend it would have been appropriate for the trial court to take the case from the jury and direct a Verdict of Judgment of Acquittal in Petitioner Favor. See State v. Biter, 119 A2d 894 (Del. super. 1955). A Judgment of Acquittal denies the sufficiency of the evidence and Challenges the State's right to go to the jury. Id. at 898. It is only where the State has offered insufficient evidence to sustain a Verdict of guilt that a motion for Acquittal will be granted. Id.

Wherefore, this court must determine had Petitioner's trial counsel Properly argued the available evidence that someone other than Petitioner committed these crimes, under the circumstances would the trial court granted a motion for Judgment of Acquittal had counsel filed a motion after the State rested its case. counsel's errors and accumulated omissions prejudiced the rights of Petitioner to receive due process of law in a timely fashion throughout the trial Proceedings in Violation of the 14th Amendment to the United States Constitution.

88.

## Argument

XXI. The State court Violated The Federal Constitional
by Trial counsel Denied petitioner of His 6th
Amendment Right To Effective Assistance of
Counsel on Direct Appeal see Reed V. State No.
44 2001 order As established in Strickland V.
Washington 466 US 668 (1984)

### Standard And Scope of Review

Standard And Scope of Review trial counsel gross
misconduct of petitioner's Appeal issue relating to the
trial court's instructions on the Admission And limied
Use of ms. West's Allege prior out-of-court statement
because it thought the statement was the proper product
of 11 Del. C § 3507(a) Voluntariness. See Hatcher V. State
Del. supr. 337 A2d 30 (1975) And State V. Rook Del supr 401 A2d 943 (1979)
holding that 3507 statements must be voluntary product of Free
will.

### Argument

On Appeal to the Delaware supreme court trial counsel escalated
his gross misconduct by using the incriminating statements he
intentionally elicit From ms. West on re-cross examination. Forcing
her by threat of revoking her sentence of probation For drug
convictions, to corrobrate State's witness kenyon Horsey's
testimony that ms. west told him that petitioner shot the victim.

(See, proposed Amended Claim "A" on page 2 to 5 of Letter To Judge Graves Exhibit "B" Attached), Also petitioner **clarified** his position on ms. West's 3507 out-of-court statement Allegedly made to mr. Horsey herein above on page 5 to 7.

Trial counsel impermissibly referred to the incriminating testimony elicit From ms. West And recited her confirmation to the statement that she told mr. Horsey that petitioner shot the victim. (see counsel's opening Brief To the Suprme Court page 27 to 33). The Delaware Suprme court may have rejected petitioner's Appeal issue relating to the trial court's instructions on the Admission And limited use of ms. West's Allege prior out-of-court statement because it thought the statement was the proper product of 11 Del. C. §3507(a) Voluntariness. see <u>Hatcher v. State</u> Del. supr. 337 A 2d 30 (1975) And <u>State v Rooks</u>. Del. supr. 401 A2d 943 (1979). holding that 3507 statement must be Voluntary product of Free will. Also see supreme court's order Affirming petitioner's convicti on <u>Reed v State</u> Del. supr. ct. No. 44, 2001 order July 12, 2001). Walsh, J. page 2 & 3 where it (A-172 to A-173) Appear the court thought ms. West's Allege out-of-court statement was voluntary And properly tested on direct And cross examinations For reliability And trustworthiness.

Had the supreme court known that trial counsel elicit the incriminating testimony on re-cross examination coahting the inconsistency in ms. West's continuous denial on direct And cross examinations of ever telling mr. Horsey that petitioner shot the victim, then the court may have ruled differently that counsel's misconduct Violated petitioner

90

5Th Amendment right against self-incrimination and that because ms. west was threaten with her prior drug con viction to recant her denial of the out-of-court statement to mr. Horsey, the voluntariness requirement pursuant to 11. Del. C. S 3507 was not satisfied prior to admitting the statement under D.R.E. 801(d)(1)(a) and D.R.E. 613(c) and (d). See United States V. Mannino 212 F.3d 835, 845 (3d. cir. 2000) (counsel's Failure to raise the sentencing issue on direct Appeal prejudiced petitioner because the court would have vacated sentence had the claim been raised). The Due Process Clause of the 14Th Amendment guarantees the right to effective Assistance of counsel on A First Appeal. See Evitts V. Lucey 469 U.S. 387, 396, - 99 (1985). IF counsel "entirely Fails to subject the prosecution's case to meaningful adversarial testing," as is the case here, the adversarial process itself becomes presumptively unreliable. see United States V. Cronic 466 U.S 648. 659 (1984). Trial counsel's errors of misconduct in the case at bar acting as a second prosecutor constituted denial of Assistance of counsel and court need not establish actual prejudice. see Rickman V. Bell 131 F3d 1150, 1156-60 6Th cir. 1997). Therefore any subsequent Jury Instructions for consideration of ms. west's allege 3507 statement were constitutionally infirm. And plain error.

## Conclusion

Wherefore there exist an overwhelming probability that but For trial counsel's accumulated errors and omissions in the pretrial stage, at trial and on Appeal the courts would have

91

entertained a different result. petitioner has demonstrated
that his Federal constitutional Rights were violated in the State
court proceedings, and that he is entitled to this court's
jurisdiction in addressing those constitutional violations. under
the Fourth, Fifth, Sixth, and Fourteeth amendments of the constitution
For the reasons stated within his habeas corpus petition, Thus:
since _Strickland_ prejudice is satisfied on one or all counsel's
trial errors complained of herein. petitioner prays the
Honorable court will Grant his habeas corpus and Direct
that his State convictions be reversed, and or any other
relief this court deems necessary.