In The United States District Court
For The District Of Delaware

Ralph Reed,
        Petitioner,

    v.                                    C. A. No. 06-445-KAJ  NH

Thomas Carroll, eT Al.,
        Respondents

Petitioner's Reply To Respondents'
Answer To Petitioner's Habeas
PetiTion

```
FILED

JAN -8 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```
BD scanned

Now Comes the petitioner, Ralph Reed, who
offer this Reply in opposition to the respondents'
Answer dated November 22, 2006. The respondents
make the same identical Frivolous Arguments Against
petitioner Reed's ineffective Assistance of counsel
claims And Actual innoccence claims that were All
timely presented to State Courts on the original
And Amended petition Allowed by The Superior Court.
(See Petitioner's December 20, 2004 Letter Reply page
4 to 8 Filed in the Superior Court contained in
Petitioner's Appendix To The Delaware Supreme
Court A-76 to A-101 And Superior Court's
decision denying Postconviction pg. 1 at A-121).
    Contrary to the respondents' Answer the petitioner
rest his case on three constitutional violations which

(1)

invoke the Fundamental miscarriage of justice exception prohibiting the conviction of one who is actually innocent.

Even if this court could not find cause and prejudice from petitioner's procedural default, however the three constitutional violations concerning ineffective assistance of trial counsel and the misconduct of the trial judge and prosecuting attorney during jury selection * and throughout trial by tampering with the witnesses and threatening the witnesses in order to cover-up or conceal evidence of actual innocence, thus exposes a defect at the heart of petitioner's conviction. <u>See</u> <u>Henderson v. Sargent</u>, 926 F.2d 706, 713 (8th Cir. 1991) (Cause need not be shown in an "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent").

The United States Supreme Court has acknowledged that concern for avoiding a fundamental miscarriage

---

\* The respondents suggests at page 7 of their Answer that the Superior Court's barment of the <u>Batson</u> claim pursuant to Super. Ct. Crim. Rule 61(i)(3) is due to a failure to adequately present the claim on postconviction. However the Superior Court only cited Rule 61(i)(3) in denying petitioner's claim of cause and prejudice that his trial counsel was ineffective for not properly raising the claim during trial. However, petitioner allege that the State Court's decision contrary to <u>Batson</u> and <u>Strickland</u>.

(2)

OF justice, particularly regarding ineffective claims, must outweigh the principles of comity and Federalism that form the basis for the procedural bar. See Murray v. Carrier, 106 S. CT. 2639, 2650 (1986).

In our system of justice, a fundamental miscarriage of justice occurs when a person is found guilty of a crime even though the jury had reasonable doubt about his guilt. See Henderson, 926 F.2d at 713. The Supreme Court, in applying the actual innocence exception, has looked to whether correction of the constitutional error at retrial probably would result in a different outcome. See Smith v. Murray, 106 S. CT. 2661, 2668 (1986) (considering whether constitutional error served " to pervert the jury's deliberations concerning the ultimate question ").

When a prisoner assert actual innocence he must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." See Cristin v. Brennan, 281 F.3d 404, 420 (3d cir. 2002); Also see Henderson, 926 F.2d at 713, FN 12 (Perhaps as good a formulation of the criterion as any is that the petitioner for collateral attack must show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt).

Actual innocence means "Factual innocence, not mere legal insufficiency". Bousley v. United States, 523 U.S. 614, 623 (1998).

When applying this concept of actual innocence to the facts of petitioner's case he refer this Court to "Appellant's Opening Brief" to the Delaware Supreme Court attached hereto. The misconduct of trial Judge, prosecuting attorney and petitioner's own trial counsel during jury selection and throughout trial as described in the attached Brief violated every right and liberty petitioner enjoy under the 6Th, 8Th and 14Th Amendments to the United States Constitution to impartial Jury, Judge and counsel, and against cruel & unusual punishment and right to complusory process.

The trial court's, prosecuting attorney's and petitioner's trial counsel's actions are criminal and also violate petitioner's civil rights prohibiting racial discrimination.

The attached Brief refutes all of the Frivolous Arguments and attacks on petitioner's constitutional, civil and human rights to exist as a Free black man contained in the Respondents' Answer against petitioner's Actual Innocence Claim.

For instance, of one aspect of these State Judicial Officials misconduct, in Respondents' Answer at page 14 they try to minimize petitioner's trial counsel's improper cross examination of prosecution's witness Sharnelle West which violated petitioner's 5Th Amendment right against self incrimination

prohibiting offering evidence against himself. The respondents stated:

> On cross-examination, West testified that
> she told Horsey that the defendant had done
> the Shooting because that was what she heard
> people saying at The Little Creek Apartments

(State's Answer page 14)

The State-respondents cite this passage from Ms. West's testimony in an attempt to justify the so-called, harmlessness, of their and petitioner's trial counsel misconduct on cross-examination. But this court should take notice of the judicial facts that this same identical answer by Ms. West on direct examination by the presecution was <u>Stricken</u> from the record as being impermissible hearsay. See Ms. West's direct-examination T.Tr. B-181 in petitioner's Appendix to the Delaware Supreme Court A-46:

> Q. Didn't you tell Kenyon he shot that man?
> A. No, because I didn't see him shoot him.
> Q. You knew he shot him, didn't you?
> A. I mean that's what was said.
> Mr. Haller: Your Honor, I object.
> The Court: Sustain. The last question and answer are stricken.

(Mr. Haller is petitioner's former Trial counsel).

Petitioner's trial counsel's incriminating re-cross-examination of Ms. West:

Q. What did you tell Kenyon Horsey about the shooting?

A. That someone had been shoot, shot and hit a house.

Q. <u>Did you tell him any particular person had done the shooting</u>?

A. <u>Yes.</u>

Q. <u>Who was that</u>?

A. <u>I said Ralph.</u>

Q. <u>Why did you say Ralph</u>?

A. <u>Because that's what they were saying out at Little Creek, that Ralph did it.</u>

Q. <u>Is this something you had heard</u>?

A. <u>Yes.</u>

(Ms. West re-cross T. Tr. D-16 contained in petitioner's Delaware Supreme Court Appendix A-58).

When looking at the content in which petitioner's trial counsel's incriminating cross-examination of Ms. West was given and the fact that this previous question and answer were stricken from the trial record as impermissible hearsay, thus only aggravate the error and cannot suffice as a justification by the Respondents that the error was harmless, especially when considering the <u>Recorded Fact</u> that the Trial Judge, prosecuting attorney and petitioner's trial counsel threaten Ms. West with revocation

(6)

of her probation sentence to recant her Favorable testimony on direct, cross and re-direct examinations. Ms. West testimony was concerning a prior statement Fraudulently attributed to her by another prosecution's witness, Kenyon Horsey, to whom petitioner claim was the actual perpetrator of the crime. Thus trial counsel's misconduct not only violated petitioner's 5th Amendment right against self-incrimination and 6th Amendment right to effective assistance of counsel, but also was counterproductive to his defense that Mr. Horsey committed the crime therefore supporting petitioner's actual innocence claim. See Henderson v. Sargent, supra, a Federal case on All Fours with petitioner's issue, where a claim of ineffective assistance of counsel resulted in a miscarriage of justice for counsel's Failure to investigate possibility that other people had motive, opportunity and ability to kill victim and counsel's maintaining alibi defense that had been diminished considerably by petitioner's recanted statement that he had been present at scene of murder. Id. 926 F. 2d 710-13.

In the attached supporting brief in Arguments II and III pages 13 thru 33 petitioner cites three (3) more Federal cases "on All Fours" with his ineffective assistance of counsel claim; actual innocence claim and resulting Fundamental miscarriage of justice claim for Failure to adequately investigate and use readily available discoverable impeachment evidence on cross of the prosecution's witnesses to expose bias, motive, intent and purpose of witness to testiFy Falsely against petitioner and to support an affirmative defense that someone other

(7)

than petitioner committed the crime which could easily been
establish by using the critical inconsistencies in all the State
witnesses' testimony to show their motive to testify falsely
against petitioner to cover-up their own involvement in committing
the murder. See Kyles v. Whitley, 514 U.S. 419 (1995); Berryman
v. Morton, 100 F.3d 1089 (3rd cir. 1996); and Jones v. Wood, 207
F.3d 551 (9Th cir. 2000). Petitioner contend that the State
Courts' decisions are "contrary to" and "involve an unreasonable
application" of the Federal principle of law of these cases to
the facts of his claims. Thus, since the State Courts failed
to Review petitioner's actual innocence claims under the correct
standard of law governing the principle of Fundamental
miscarriage of justice under Superior Court Criminal Rule
61 (i) (5) as the claims were presented to all State Courts,
then the last State Court to review the claims on the
merits is not entitled to any level of difference or
presumption of correctness under 28 U.S.C. § 2254 (e) (1),
especially, as here, when the State Court Trial Judge's
misconduct..." exposes [critical]...defects at the heart
of petitioner's [illegal] conviction [and sentences]". See
Henderson, Supra, 926 F.2d at 713.

(8)

## Evidentiary Hearing And Discovery

In the attached Brief petitioner established the following:

a). The need for additional evidentiary hearings on steps two and three of Batson mandatory test in the state court's whom failed to fully and fairly adjudicate the claim on the merits. (See page 11 of attached Brief);

b). Direct the State to provide petitioner with copies of the Daily Log Books for Buildings 22 and 23 of the Maximum Housing Unit for the months of May 2004 to June 22, 2004. These documents are pertinent to petitioner's newly discovered evidence claim supported by the affidavit of inmate Jerome Reed. (See page 15 of attached Brief);

c). An evidentiary hearing is required to fully and fairly develop the new evidence contained in the affidavit of inmate James Riley which support the source of the relevant facts in Jerome Reed's affidavit. (See page 16 of attached Brief).

The State Court's proceedings did not adequately develop the facts of petitioner's newly discovered evidence claim that was wrongly discredited by the Trial Judge's and prosecuting Attorney's misconduct to conceal evidence of petitioner's actual innocence.

In Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), the United State Supreme Court recognized that district courts had plenary authority to conduct evidentiary hearings in their discretion, constrained only by those

six (6) occasions in which a hearing was required. See, Cristin v. Brennan, 281 F.3d 404, 414 (3d. Cir. 2002); Townsend, AT 313, 83 S. ct. 745. Under Townsend an evidentiary hearing was mandatory :

> [I]f (1) The merits of the factual dispute were not resolved in the state hearing ; (2) The state factual determination is not fairly supported by the record as a whole ; (3) The fact finding procedure employed by the state court was not adequate to afford a full and fair hearing ; (4) There is a substantial allegation of newly discovered evidence ; (5) The material facts were not adequately developed at the state-court hearing ; or (6) For any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

(Townsand, Id. ; Cristin, at 414 n.9 )

The contemporaneous records of the trial, facts, issues, and pleadings had and filed in the state courts contained in the petitioner's Appendix To The Delaware Supreme Court and arguments made herein above meet all of Townsend's 6-mandatory prerequisite requirements for granting and conducting an evidentiary hearing in the Delaware District Court for the good reasons stated above in paragraphs a, b & c.

The state of Delaware and petitioner's former trial

counsel cannot find one tittle of law to support or justify the racism and injustice they perpetuated against petitioner by discriminating in the jury selection process in the worse form to impanel an all white jury with one or more jurors knowing the victim of the crime to which petitioner was tried; and use of perjure testimony and witness intimidation by the Trial Judge himself to obtain petitioner's conviction.

The State Judicial Officials' misconduct is criminal and in violation of petitioner's civil liberties prohibiting racial discrimination by the Tribunal Of Law under the color of State and Federal Constitutions.

Wherefore this court should overlook the frivolous and meritless contentions made in the Respondents' Answer and grant petitioner Habeas Corpus relief: 1) a new trial before a different Judge; 2) dismiss all charges and; 3) grant any evidentiary hearing to establish an adequate record for appellate review.

Respectfully Submitted,

_Ralph Reed_

Ralph Reed, pro se
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

(Dated: December 25, 2006



im Ralph Reed
SBI# 320813  UNIT mHu-22-A-L-5
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

$ 04.20
02.1A
0004608975   JAN 05 2007
MAILED FROM ZIP CODE 19977

Legal mail

Judge Kent A. Jordan (NHL)
united state District court
844 N King Street Lockbox 18
Wilmington    DE 19801

Legal mail

CC:MJ)

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RALPH REED, | § | |
| | § | |
| Defendant Below- | § | |
| Appellant, | § | No. 534, 2005 |
| | § | |
| v. | § | On Appeal from Superior Court |
| | § | of Sussex County Case No. |
| | § | 9911018706 |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

DELAWARE SUPREME COURT
FILED
2006 MAR 17 P 3 38
DEPUTY CLERK
WILMINGTON

## **APPELLANT'S OPENING BRIEF**

**LEO JOHN RAMUNNO, ESQUIRE**
1205 N. KING STREET
WILMINGTON, DE 19801
ATTORNEY FOR APPELLANT

*Dated: March 17, 2006*

( Exhib. 1 )

# TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS...............................................iii-iv

NATURE AND STAGE OF PROCEEDINGS.........................1

SUMMARY OF ARGUMENTS......................................2

STATEMENT OF FACTS..........................................3

ARGUMENTS

I.    The Trial Court abused its discretion in reviewing Appellant's claim
that the State's use of unconstitutional Voir Dire questioning resulted in
discriminatory selection of jury did not violate the 6th and 14th Amendments
to the United States Constitution...........................................6-12

II.    The Trial Court abused its discretion by concluding that Appellant's
Trial counsel did not deprive him of his 6th Amendment Right to effective
assistance of counsel for failing to properly investigate and subpoena two
crucial defense witnesses who would support Appellant's story that Kenyon
Horsey committed the crime...........................................13-27

i

a. The Trial Court and States attack on Jerome Reed's credibility was improper...................................................................................14-18

b. Materiality of Jerome Reeds' Affidavit....................18-23

c. Ms. DeShield's testimony shows that State's Witness, Sarah Handy was involved in the crime..................................................23-27

III.    The Trial Court abused its discretion in denying Appellant's claim that his trial counsel improperly opened the door for the State to introduce Ms. West's § 3705 statement violated the Appellant's 5th Amendment Right against Self-Incrimination and 6th Amendment Right to Effective Assistance of Counsel.....................................................................28-33

Conclusion...........................................................................34

Attachments:

Lower Court's Decision........................................Exhibit A

Certificate of Service

# **TABLE OF CITATIONS**

## **CASES**                                                      **PAGE**

Batson v. Kentucky, 476 U.S. 79 (1986)...............................6

Berryman v. Morton, 100 F.3d 1089 (1996)...........................27, 32

Chance v. State, 685 A.2d 351...........................................26

Filmore v. State, 813 A.2d 1112 (Del. 2003).............................5

Jacobs v. State, 358 A.2d 725 (Del. Supr. 1996)........................6

Jones v. Wood, 207 F.3d 557 (9th Cir. 2000)...........................5, 18, 27

Johnson v. Ellingsworth, 783 F. Supp. 215, 221 (D. Del. 1992)......7

Kyles v. Whitley, 514 U.S. 419 (1995)..................................26

Miller-El v. Cockrell, 123 S.Ct. 1029 (2003)...........................6, 8

Mu'Min v. Virginia, 500 U.S. 415, 431 (1991)..........................12

Ray v. State, Del. Supr. 587 A.2d 439 (1991)...........................29

Reed v. State, 782 A2d 266 (Del. 2001)..................................1

Renai v. State, 450 A.2d 382, 384 (Del. 1982)..........................28

Shockley v. State, 565 A.2d 1373, 1377 (Del. 1989)...................13

Smith v. State, 669 A.2d 1 (Del. Supr. 1995)...........................28, 32

State v. Clark, 78 Wash. App. 471, 898 P.2d 854, 858 (1995)..........19

iii

State v. Reed, 2000 WL33179685 (Del. Super)..........................1

State v. Rooks, 401 A.2d 943 (Del. Supr. 1979)........................33

Strickland v. Washington, 466 U.S. 668 (1984).........................12, 13

Webster v. State, 604 A.2d 1364 (Del. Supr. 1992).....................5

iv

## **NATURE AND STAGE OF PROCEEDINGS**

On May 16, 2002, a Sussex County jury found the Appellant Ralph Reed guilty of Murder in the First Degree and possession of a Firearm during the Commission of a Felony.

Thereafter, Mr. Reed filed a motion for a new trial which was subsequently denied by the trial court on December 19, 2000. State v. Reed, 2000 WL33179685 (Del. Super). The Delaware Supreme Court affirmed Mr. Reed's convictions on direct appeal. Reed v. State, 782 A2d 266 (Del. 2001).

On July 8, 2004, Mr. Reed filed a motion for post-conviction relief. On March 3, 2005 and April 8, 2005, the trial court conducted and Evidentiary Hearing.

Subsequently on October 5, 2005, the trial court denied Mr. Reed's motion for post-conviction relief.

This is Appellant's collateral appeal from the Superior Court denial of post-conviction relief. It should be noted that Appellant insisted on preparing the Opening Brief and Appendix and required the undersign to submit his argument to this Honorable Court.

1.

## SUMMARY OF ARGUMENTS

1.    The use of discriminatory voir dire questioning was to secured an all white jury composed of unidentified white jurors who may know the victim or victim's relatives or their friends or associates. Trial counsel did not properly challenge these errors prior and during the trial.

2.    Trial counsel failed to pursue a defense that someone other than Appellant committed the crime to which the evidence supports or would have supported had counsel adequately investigated prior to trial.

3.    The Lower Court abused its discretion in allowing the State to introduce a prior statement in Appellant's trial which was allowed by the Appellant's trial counsel.

2.

## STATEMENT OF FACTS

On May 16, 2002, they found Appellant Ralph Reed guilty of Murder in the First Degree and Possession of a Firearm during the Commission of a Felony. The firearm was never recovered or produced into evidence during trial.

The only evidence the prosecution produced at trail against the Appellant was the account of four (4) alleged eyewitnesses, Yvonne DeShields, Sarah Handy, Juanita Hopkins and Reshawn Jefferson.

The Appellant's defense at trial was that Mr. Horsey was the actual perpetrator of the crime. Because trial counsel wasn't in Appellant's best interest, counsel advanced a weak alibi defense that Appellant was at his grandmother's house asleep during the shooting.

Therefore, trial counsel never investigated the names of potential witnesses Appellant provided him within which who would support Appellant's defense that Kenyon Horsey was the actual killer. The other four state witnesses against Appellant were all involved in Mr. Horsey's illegal drug dealing enterprises, as well as Appellant. And the evidence support that the four state witnesses were involved in the killing of the victim with Mr. Horsey.

3.

During the preparation of his post-conviction relief motion the Appellant discovered the location of one witness he asked his counsel to investigate prior to trial who would support appellant's defense that Kenyon Horsey was the actual killer. This witness was Jerome Reed.

The Lower Court conducted an evidentiary hearing on March 3, 2005 and April 8, 2005. Jerome Reed testified at this hearing that on the night on the crime he observed Kenyon Horsey and Yvonne DeShields sell drugs to the murder victim and that Mr. Horsey pulled out a gun and fired multiple shoots into the victims' vehicle. He further testified that Ms. DeShields dispose of the gun for Mr. Horsey.

The State improperly attacked and discredited Appellant's and Jerome Reed's credibility at the evidentiary hearing by presenting testimony from a Delaware Correctional Center Official who claimed that Appellant and Jerome Reed were cellmates from June 22, 2004 until February 22, 2005 in building 22 of the maximum housing unit.

The evidence was used to infer that at this period of time Appellant and Jerome Reed made up the story that Jerome actually witnessed Mr. Horsey shoot the victim as contended in Jerome's sworn affidavit.

4.

Because Appellant advanced a "same character" claim that someone other than he committed the crime qualify as an actual innocence claim to which no procedural bar apply. See <u>Webster v. State</u>, 604 A.2d 1364 (Del. Supr. 1992). This claim is brought under <u>Jones v. Wood</u>, 207 F.3d 557 (9th Cir. 2000). The same character evidence is a defense permitted under D.R.E. 404 (b). Jerome Reed's affidavit supports Appellant's actual innocence claim. The selection of an all white jury within unidentified jurors possibly knowing the victim of crime or victim's family, friends or their associates, violate the essential demands of fairness under Article I section 7 of the Delaware Constitution. See <u>Filmore v. State</u>, 813 A.2d 1112 (Del. 2003).

5.

## ARGUMENT

## I.    THE TRIAL COURT ABUSED ITS DISCRETION IN REVIEWING APPELLANT'S CLAIM THAT THE STATE' USE OF UNCONSITUTIONAL VOIR DIRE QUESTIONING RESULTED IN DISCRIMINATORY SELECTION OF JURY DID NOT VIOLATE THE 6th and 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION.

SCOPE AND STANDARD OF REVIEW: The scope of voir dire examination lies in the broad discretion of the trial judge and is subject to review only for abuse of that discretion. Jacobs v. State, 358 A.2d 725 (Del. Supr. 1996). Also, the discriminatory use of voir dire questioning which violate Batson v. Kentucky, 476 U.S. 79 (1986) is reviewed by the standard set forth in Miller-El v. Cockrell, 123 S.Ct. 1029 (2003).

On April 3rd thru April 8th, 2005 the trial court conducted an evidentiary hearing based upon the claims inserted in Appellant's motion for an evidentiary hearing. (See Appellant's Motion for evidentiary hearing attached Appellant's motion to remand and to stay briefing on Appeal filed in this court).

Prior to the scheduled evidentiary hearing, Appellant wrote to the trial court requesting the appointment of an attorney to represent him due to the

6.

complexity of the issues raised in the post-conviction motion, especially the Batson claim which involves the obvious discriminatory disparate voir dire questioning which were specifically targeted at excluding African-Americans while permitting white venire members to serve on the jury who actually knew or could have been friends with the victim and his family without being identified. (See Appellant's February 25, 2005 letter to Judge Graves A-67 to A-69). Before the court ruled on Appellant's request for appointment of counsel, his mother hired an attorney to represent him at the hearing. However, the attorney did not properly raise the Batson issue at the evidentiary hearing nor did he investigate and collect statistical evidence of the prosecutions use of the disparate voir dire questioning policy in other prior cases to support a Batson/Swain prima facie case of systematic exclusion of a particular race from jury service or to secure juries who know the victim of crime. Nor did the trial court require the prosecution to satisfy step two of Batson to articulate an on-record race neutral explanation for its use of peremptory challenges and the disparate voir dire questioning.

Since there is no right to the 6th Amendment effective assistance of counsel in a post-conviction proceeding for default claims, *see* Johnson v. Ellingsworth, 783 F. Supp. 215, 221 (D. Del. 1992), on April 27, 2005 prior

7.

to any final decisions, Appellant wrote a letter to Judge Graves requesting that additional evidentiary hearing or inquiry needs to be held on the unsolved Batson regarding the disparate voir dire questioning of similarly situate white and black venire members which resulted in the purposeful exclusion of the black jurors. (See Appellant's April 27, 2005 letter to Judge Graves, A-70 to A-75).

In Appellant's December 20, 2004 letter/brief to the trial court, he made out a prima facie case that the prosecution in fact used disparate questioning which later resulted in purposeful discriminating treatment of black and white venire members. The United States Supreme Court stated in Miller-El v. Cockrell, 123 S.Ct. 1029, 1043 (2003) that: "It follows that if the use of disparate questioning is determined by race at the outset, it is likely a justification for a strike based on the resulting divergent views would be pretextual." Id. (See Appellant's December 20, 2004 letter/brief A-79 to A-80). In this context, the differences in the questioning posed by the prosecutors are some evidence of purposeful discrimination. Batson, 476 U.S. at 97, 106 S.Ct. 1712 ("Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose"). Miller-El,

8.

Id. at 1043.

In appellant's case the voir dire transcripts explicitly show that the trial court itself asked any prospective jurors who may "know the defendant or his friends or relatives" to identify themselves for purpose of being excluded. (See T.Tr. Vol.A, pg 4) (A-1). However, no such question was asked to the jury panel regarding any juror who knows the victim or his friends or relatives for purpose of being excluded. (See T.Tr. Vol. A, pg 6, A-2). Also see Motion for Evidentiary Hearing with Jury Selection Transcripts attached hereto.

Because that question was asked, the panel from the outset, every juror that revealed they knew the defendant or his friends and relatives were excluded for cause by the court or challenged for cause by the prosecution.

As Appellant argued in his motion for Evidentiary Hearing, the friends and relatives of any person is of that persons' own race, another statistical fact that counsel failed to proffer with available historical records in support to show the prosecution's discriminatory intent under Batson/Swain standards.

In comparison of similarly, situate black and white jurors, a black juror, Ms. Turner was excluded by the prosecution for cause because she

9.

revealed that she vaguely knew of the State's witness, Darren Bacon's

mother from work and Mr. Bacon and her son were friends. And four other

jurors were excluded for causes by the trial court for similar reasons.

Because no such question was asked regarding the victim's family and

friends from the outset of jury selection, no white juror, or otherwise, who

may have been affiliated with the victim personally or his friends and

relatives, identified themselves to the trial court merely because they felt

such information was insignificant. This contention is evident when viewing

the voir dire transcripts of a white juror, Mr. Haley, who contacted the trial

court on the second day of trial and stated that "he thought it might be

important to inform the court that he knew the victims' brother from work."

The victims' brother attended the entire trial.

Knowing this information, neither the court, the prosecution or

Appellant's own trial counsel sought to have Mr. Haley excluded for cause

as it did with the black juror, Ms. Turner and the other four jurors who said

they knew the Appellant's relatives or friends.

Nor did the trial court or prosecution sought to find out whether or not

there were any other unidentified jurors who knows the victims relatives an

and friends.

10.

Contrary to what the trial court stated in the decision denying post-conviction relief on page 7 (A-127), the court did not conduct an extensive voir dire of Mr. Haley which should of involved further questioning or inquiry about the relationship he and the victim's brother had their Supervisor they both worked for at the Indian River Power Plant. There was no other way to determine what relationship either Mr. Haley or the victim's brother shared with other co-workers at the Plant that may have late influenced Mr. Haley's impartiality.

Thus this discriminatory intent of the State of Delaware in the jury selection process is indisputable by the trial record themselves.

Since the trial court failed to fully adjudicate this issue on the merits and failed to required the prosecution to explain its use of disparate questioning and conclusion of similarly situate white and black venire members which resulted in the purposeful discriminatory action must remand this case to the Superior Court before a different judge for a proper inquiry under steps two and three of <u>Batson</u> mandatory test.

But in light of voir dire questioning, there is no way to reconstruct the trial records to determine the identity of those jurors who might have knew the victims' friends or relatives that actual served on Appellant's jury, which

11.

require this court to automatically reverse Appellant's convictions and sentences. See, <u>Mu'Min v. Virginia</u>, 500 U.S. 415, 431 (1991) (voir dire enables the trial court to select impartial jury and assists counsel in exercising peremptory challenges).

But for trial counsel unreasonable decision not to properly raise the <u>Batson</u> violation and timely challenge the infirm voir dire questioning by the trial court, there is a reasonable probability that Appellant would not have been tried and convicted by an unconstitutional impaneled jury. <u>Strickland v. Washington</u>, 466, U.S. 668 (1984).

12.

## II.   THE TRIAL COURT ABUSED ITS DISCRETION BY CONLUDING THAT APPELLANT'S TRIAL COUNSEL DID NOT DEPRIVE HIM OF HIS 6th AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO PROPERLY INVESTIGAGE AND SUPBOENA TWO CRUCIAL DEFENSE WITNESSES WHO SUPPORT APPELLANT'S STORY THAT KENYON HORSEY COMMITTED THE CRIME.

SCOPE AND STANDARD REVIEW: Whether or not trial counsel failed to investigate properly is reviewed under the performance and prejudice test of Strickland v. Washington, 466 U.S. 668 (1984). The standard and scope of review applicable to this issue is whether the Superior Court abused its broad discretion in denying that Appellant's Strickland claim in the post-conviction relief proceeding. Shockley v. State, 565 A.2d 1373, 1377 (Del. 1989).

Prior to the commencement of trial, Appellant made several request to his trial counsel to interview and subpoena Jerome Reed and Keyshawn Banks. Mr. J. Reed would have testified that he observed Kenyon Horsey shoot and kill Gregory Howard as Howard drove away in his Ford Bronco near the Little Creek Apartment complex. (See Jerome Reed's affidavit A-102-103).

13.

Although Appellant was unable to locate and obtain an affidavit from Keyshawn Banks, however, Appellant expects that Mr. Banks will confirm that he posses personal knowledge that he was with State's witness, Reshawn Jefferson on the night of the crime in question and that Mr. Jefferson did not actually witness the shooting as he testified to under oath at Appellant's trial that he observed Appellant standing closed to the murder victim's Ford Bronco as the victim sped away. (T.Tr. Vol. B, pg 68, A-22, 23)

a. The Trial Court and States attack on Jerome Reed's credibility was improper.

At the Evidentiary Hearing, the trial court and State wrongfully attacked and discredited Jerome Reed's affidavit with unsubstantial accusations that Mr. Reed and Appellant fabricated the facts while housed in the same cell together at the Delaware Correctional Center (DCC). To support these false attacks on Mr. Reed and Appellant's credibility's, the trial court and State's attorney relied on the testimony from Sonya Lewis, a DCC employee, who testified that she assigns inmates to cells at DCC. Appellant contended that Ms. Lewis stated that from May 10, 2004 to June 22, 2004 the Appellant and J. Reed were cellmates with Jerome on the

14.

top bunk and the Appellant on the bottom bunk. (See Super. Ct. Decision pg.
26 at par 3 (A-146). Ms. Lewis bases these conclusions off a computer
printout sheet and a personal index card. (See Evidentiary Hearing
Transcript pg. 125 to 135 Lewis (A-105-115). However these records are not
accurate.

Appellant contends that at all times prior to obtaining Jerome Reed's
affidavit, he was housed in building 22 and Mr. J. Reed was housed in
building 23. The Daily Log Books for these specific units (building 22 and
23) will verify the actual dates and times when Appellant and Mr. Reed
entered these units. Therefore, before this court rules on this issue it should
subpoena the Daily Log Books for Buildings 22 and 23 of the Maximum
Housing Unit (MHU) for the months of May 2004 to June 22, 2004, the
dates the state falsely claim J. Reed and Appellant were housed together in
building 22 and same cell.

The State also attacked J. Reed's credibility with testimony from State
Police Officer, Matthew Zolper. (See Super. Ct. Decision pg. 25, A-145).
Mr. Zolper merely testified that J. Reed was a past confidential informant
who could no longer be trusted or relied upon. (See Zolper Testimony Evid.
Hr. Tr. pg.139 to 143 (A-116-120).

15.

The only other attacks on the averments contained in Jerome Reed's sworn affidavit by the State is that: "Since Mr. Reed and Appellant don't know each other then it is highly suspicious how Appellant obtained Mr. Reed's affidavit out of the blue. (See Super. Ct. Decision par 1, pg. 26 (A-146). This minor discrepancy can easily be explained. An inmate writ writer by the name of James Riley who assisted Appellant with filing his post-conviction and who was housed in building 23 with Jerome Reed became aware through prior unrelated legal discussions with Mr. Reed that Mr. Reed possessed material information concerning Appellant's case. (See affidavit of J. Riley A-153-155). Mr. Riley provided Mr. Reed with the necessary last names of the people involved in Appellant's case in which Mr. Reed only knew on first name basis. In no way did Mr. Riley provide Mr. Reed with any other facts concerning the Appellant's case. The fact that Mr. Reed may have got·someone else to re-write his affidavit is not proof he is not the author of the sworn statements therein in which he signed personally under the penalty of perjury for any false statements sworn to therein. (See Super. Ct. decision pg. 26 par 5 (A-146).

Lastly, the State attack Appellant's credibility by claiming that Appellant first advanced an alibi that he was asleep at his grandmother's

16.

house when the shooting occurred, but subsequently at trial during his testimony Appellant changed his alibi and now state he was present at the scene of the crime and that another suspect, Kenyon Horsey, did the actual shooting. (See Super. Ct. decision pg. 13 and pg 4, par. 3 (A-133).

The Appellant continue to deny that he never agreed with his trial counsel on advancing the first alibi defense. His trial counsel acted on his own with this alibi and the State cannot and have not produced any evidence that Appellant supported his trial counsel's defense strategy. Thus this is the very reason why Appellant is claiming his trial counsel provided ineffective assistance. (See page 3-4 of Super. Ct. decision Ground 2 where that statement concerning the alleged alibi at Appellant's grandmother's house originated (A-123-124).

The trial court stated at page 27 of its decision (A-147) quote: "in reviewing the testimony of the trial witnesses, there is a harmonious, consistent report of what occurred; that defendant, Mr. Bacon and their lady friends were at the utility box near the entrance of the Little Creek Apartments; and Mr. Bacon and defendant serviced the drive-by customers as to their drug needs; that defendant was flamed or ripped off by a customer who tried to drive away without paying and defendant pulled his firearm and

17.

shot him." Unquote. The trial court uses Mr. Bacon and the lady friends interchangeably with the crime as though they eye witnessed the shooting incident. However, all of these people testified that they did not see who shot the victim.

Contrary to what the trial court concluded, the four people who claim they witness Appellant shoot the victim was not...a harmonious, consistent report of what occurred. Herein, below Appellant point out the fatal inconsistencies (perjury) in the prosecutions four witnesses' testimony against him.

b. Materiality of Jerome Reed's affidavit.

The sworn averments contained in J. Reed's affidavit demonstrates that trial counsel's decision not to subpoena J. Reed as a defense witness was not reasonable and prejudiced Appellant's defense that someone else (Kenyon Horsey) committed the crime.

First, Appellant has a constitutional right under both State and Federal Law to put on "evidence of the state character tending to identify some other person as perpetrator of the crime." See D.R.E 404 (b) and Jones v. Wood, 207 F.3d 557, 562-63 (9th Cir. 2000).

The Jones' court held that before evidence implicating another suspect

18.

can be admitted, "There must be such proof of connection with the crime, such as a trail of facts or circumstances as tends clearly to point out some one beside accused as the guilty party." Id. at 562. Furthermore, the Jones' court concluded that "because the other suspect evidence was admissible under Washington law, Jones has established Strickland prejudice," from counsel's failure to present such evidence at trial. Id. at 563.

Second, evidence of motive, ability and opportunity for a third person to commit a crime is not sufficient foundation for the introduction of other suspect evidence. Id. at 562. Such evidence must be "coupled with other evidence tending to connect such other person with the actual commission of the crime charged." Id. however, a lesser foundational restriction applies to cases involving circumstantial proof of crime:

> If the prosecutions case against he defendant is largely circumstantial, then the defendant may neutralize or overcome such evidence by presenting sufficient evidence of the same character tending to identify some other persons as the perpetrator of the crime.

See Jones, 207 F.3d at 562-63 (citing) State v. Clark, 78 Wash. App. 471, 898 P.2d 854, 858 (1995).

Applying this law to the facts of this case which is consistent with D.R.E. 404 (b), the averments contained in J. Reed's sworn affidavit, that he

19.

witnesses Kenyon Horsey and Yvonne DeShields engaged in a conversation with the victim G. Howard at which time a hand to hand transaction of some sort was made and as the victim pulled away fast in his Ford Bronco, Mr. J. Reed observed Mr. Horsey pull out a handgun and fired multiple shots at the fleeing vehicle. (See J. Reed's affidavit A-92-93). Mr. Reed also stated that he observed Mr. Horsey handed Ms. DeShields the handgun and she walked off quickly towards the graveyard. (Affidavit pg. 2 A-103).

Lastly, Mr. J. Reed stated that just prior to the shooting he observed Ms. DeShields get into the victim's vehicle and drive around the block before meeting up with Kenyon Horsey. Id.

In contrast, Mr. Horsey and Ms. DeShields, two of the State's chief witnesses against Appellant at trial, both testified that Appellant committed the crime. Mr. Horsey accused a third person, Sharnelle West of telling him that Appellant "had shot the man" in which Ms. West was coerced by Appellant's own trial counsel and trial judge into corroborating that incriminating accusation. (See argument III herein below beginning at page 29).

The State's case was purely circumstantial consisting of four witnesses (including Ms. DeShields) testimonies which were all inconsistent

20.

with their geographic locations from where they claim to have witnesses the crime take place at a far distant through the foggy night inclement weather conditions over fifty or more yards away. The total of seven witnesses DeShields (T. Tr. Vol. A. pg. 159, A-15), Jefferson (T. Tr. Vol. B, pg. 66, A-22), Hopkins (T. Tr. Vol. B pg. 32, A-21) Dixon (T. Tr. Vol. B, pg. 150, A-24), Ms. Reed (T. Tr. 87, A-62) Officer Holcumb (T. Tr. Vol. A, pg. 99& 109, A-3, 4) and Officer Marvel (T. Tr. Vol. C,  pg. 60, A- 4a) all testified that it was extremely foggy and damp the night of the incident. Also Jerome Reed Testified at the evidentiary hearing that it was "really foggy out." (A-104).

There was evidence that both Mr. Horsey and Appellant possessed .380 caliber handguns of the same type used in the shooting a couple days before. (T. Tr. Vol. C, pg. 224 Horsey A-61 and Vol. E, pg. 12 Travis Johnson A-63).

In summation, Appellant's trial counsel pointed out in his closing arguments that it is mathematically impossible for State's witness Juanita Hopkins and Sarah Handy to see to shooting incident from inside their apartment windows going on around the corner at the entrance way. (T. Tr. Vol. E. pg. 168-170, A-64-66).

21.

Thus, the exculpatory circumstantial evidence contained in J. Reed's affidavit is proof that Mr. Horsey and Ms. DeShields are the actual perpetrators of the crimes to which Appellant was falsely accused by these States witnesses.

To prove this connection even further, Ms. DeShields' own trial testimony is conducive on this fact. For instance, Ms. DeShields stated: (a) on the night of the crime, she saw the victims' vehicle at he entrance way to Little Creek Apartments and that he passed her on the street by the graveyard. (T. Tr. Vol. A, pg. 129 A-7); (b) that the victim occasionally speaks to her and asks her where to buy drugs. (T. Tr. Vol. A. pg. 130, A-8); and (c) she had a bullet casing from the handgun that was used to shoot the victim (T. Tr. Vol. A, pg. 153-155, A-11 to A-13). (Compare these factors from Ms. DeShields' testimony with the averments contained in J. Reeds affidavit).

Although Ms. DeShields testified that the victim asked her where he could buy drugs, however she never stated that she referred the victim to the Appellant as a possible customer. A matter of fact, Ms. DeShields testified that she purchased drugs on the night of the crime but stated she did not buy it from the Appellant. (T. Tr. Vol. A, pg 158 and 169 (A-14, A-17).

22.

The counsel should have argued to the jury with this evidence that it is only logical to assume that if the victim asked Ms. DeShields where to purchase drugs (and admitted that she actually purchased drugs that night) that of course, she referred the victim to the same person she purchased her drugs from.

Appellant contends (and trial counsel should have argued) that that person Ms. DeShields referred the victim to for the purchase of drugs was in fact Kenyon Horsey which is supported by the sworn affidavit of J. Reed who eye witnesses the entire transaction.

c. Ms. DeShields' testimony shows that State's witness Sarah Handy was involved in this crime.

In addition to the above trial counsel failed to use the inconsistencies in Ms. DeShields' testimony to discredit Sarah Handy's testimony about witnessing Appellant pointing and shooting a gun at the victim's vehicle.

First, Ms. DeShields' testified that on the night of the crime, she went to a friends house (Herman Dark) by the deli and brought some drugs and something to drink. (T. Tr. Vol. A, pg. 1237, A-5). She heard female voices saying: "I don't believe you'll do it and then heard gunshots over from where voices were coming from." (T. Tr. Vol. A, pg, 128, A-6). The female

23.

statement "I don't believe you'll do it," can be interpreted as an utterance to

shoot the victim. Ms. DeShields went on to state that the shots came from

the area "down the creek in front of the bench." (T. Tr. Vol. A, pg 128, A-6).

When asked on cross-examination: "who were the people sitting on the

bench near the creek by Little Creek Apartment entrance way where the

shooting occurred," Ms. DeShields replied: "That Sarah, Bacon and another

unknown female were sitting on a bench three or four feet away from where

Appellant was shooting the gun." (T. Tr. Vol. A, pg. 131, 160, 161, A-9-10

and A-16-17). However, Sarah Handy testified that she observed the entire

shooting from her bedroom window at building #107. (T. Tr. Vol. A, pg.

188 to 190, A-18 to A-20).

Appellant notes again for the record, that building #107 is facing away

to the side of the entrance way to Little Creek Apartments which makes it

totally impossible for Ms. Handy to have witnesses the shooting from her

bedroom window.

Ms. DeShields testimony places Sarah Handy three or four feet away

from the shooting, thus Jerome Reed's affidavit places Ms. DeShields at the

scene of the shooting with Kenyon Horsey as confirmed by her own trial

testimony. The clear implication form Ms. DeShields testimony regarding

24.

the unknown female sitting on the bench with Ms. Handy was in fact Ms. DeShields herself.

Thus, the question becomes "which of the two females (DeShields or Handy) stated "I don't believe you'll do it" meaning urging the person with the gun to shoot the victim?" This is the question Appellant's trial counsel should have investigated prior to trial and proffered as a primary defense during trial. The question and answer about who actually shot and killed the victim Gregory Howard were never resolved at Appellant's trial.

Therefore, under the <u>Jones</u> standard (which is very similar to the sufficiency of evidence test) this evidence of the same character tending to identify some other person as the perpetrator of the, "such as a train of facts and circumstances demonstrated herein above, was admissible under D.R.E. 404 (b). In addition, Appellant points out that the prosecution's theory (as argued in summation) that there was no other person who could have committed the crime; a theory that Appellant was entitled to rebut once the prosecution relied upon it. <u>Jones,</u> 207 F.3d at 563. Appellant's trial counsel failure to subpoena J. Reed as a witness to rebut the prosecution's theory (as Appellant set forth herein) was grossly unreasonable and sufficient to establish the prejudice needed and required under <u>Strickland</u> to create a

25.

reasonable probability in a different outcome but for counsels' errors. This conclusion is premised upon the following summary:

The State's witnesses, as shown above, did not testify truthfully about who in fact possessed the gun and shot the victim. At the very least, "the train of evidence" according to <u>Jones</u> revealed here shows beyond a reasonable doubt that Ms. DeShields, Ms. Handy and Mr. Horsey were actual accomplices to the murder of Gregory Howard which should have been explained to the jury and court by Appellant's trial counsel with a request for a full chance instruction on all the lesser included offenses to first degree murder under 11 Del. C. § 271 and 274, e.g. second degree murder 11 Del. C. § 635, manslaughter 11 Del. C. § 631. <u>Chance v. State</u>, 685 A.2d 351.

Certainly the testimonial evidence raises a contrary conclusion about Appellant being the actual perpetrator of these crimes and that the State's witnesses' has placed the blame on Appellant to conceal their own direct involvement in the fatal shooting of the victim Gregory Howard.

The circumstances of Appellant's case is identical to what happened in <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995), where the actual perpetrator of the crime provided the investigation police officer with all the evidence and

26.

information that led to <u>Kyles</u> arrest and conviction. Instead of advancing the available same character defense theory that someone else committed the crime, however, counsel unreasonably advanced the weak alibi defense that Appellant was asleep at his grandmother's house when the shooting occurred, a defense that Appellant did not approve of from the outset of the trial.

The Third Circuit Court's ruling on ineffective assistance of counsel in <u>Berryman v. Morton</u>, 100 F.3d 1089 (1996) support Appellant's claims for post-conviction relief based upon <u>Jones v. Wood</u>, 207 F.3d 557 (9th Cir. 2000). A contrary ruling would be totally unreasonable to the Federal Law governing this issue. Id. 1097-1102 (the Third Circuit reviewed each of <u>Berryman's</u> claims separately and found that counsels' performance strategy were unreasonable).

27.

## III.   THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S CLAIM THAT HIS TRIAL COUNSEL IMPROPERLY OPENED THE DOOR FOR THE STATE TOR INTRODUCE MS. WEST'S § 3705 STATEMENT VIOLATED THE APPELLANT'S 5th AMENDMENT RIGHT AGAINST SELF-INCRIMINATING AND 6th AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

STANDARD SCOPE OF REVIEW: Whether the trial court's decision to admit evidence under the Delaware Rules of Evidence is govern by the abuse of discretion standard. Smith v. State, 669 A.2d 1 (Del. Supr. 1995). This court reviewed ineffective assistance claims under the totality of the circumstances standard set forth in Renai v. State, 450 A.2d 382, 384 (Del. 1982).

At the Appellant's trial, the prosecution called Kenyon Horsey as a witness to testify about a prior out-of-court hearsay oral statement allegedly made to him by Sharnelle West that the Appellant had shot the victim. (T. Tr. Vol. C. pg. 221, 222 (A-59 – 61 Horsey). The prosecution sought to introduce Ms. West's prior statement under 11 Del. C. § 3507 which requires that the witness (Ms. West) must testify on direct examination concerning both the events perceived or heard and the out-of-court

28.

statement. See <u>Ray v. State</u>, Del. Supr. 587 A.2d 439 (1991). As in Ray, the declarant Ms. West did testify at trial but refused to testify about events perceived, denying that she ever told Kenyon Horsey that the Appellant shot the victim. (T. Tr. Vol. B, pg. 160-192 West's direct, cross and redirect testimony A-25-58).

At this point, the State's foundation for introducing Ms. West's 3507 out-of-court statement through Mr. Horsey's testimony was improper because Ms. West refused to testify about the events she perceived. (See, Super. Court decision pg. 16, A-136).

Appellant's trial counsel then saved the day for prosecution by re-calling Ms. West back to the witness stand to impeach her credibility although she testified in Appellant's favor on direct and cross examination. Then counsel impermissibly directed the State's attention to Ms. West's prior criminal record which indicates that they should use it to threaten Ms. West to change her previous testimony when re-called to the witness stand. (T. Tr. Vol. B, pg 183 to 187, A-48-51). When Ms. West failed again to admit on cross examination that she told Mr. Horsey that Appellant shot the victim (T. Tr. B, pg. 187-189, A-51-52) and after trial counsel concluded his

29.

cross of Ms. West who testimony was favorable, counsel told the court that

regardless of its ruling on the 3507 requirements, he is going to impeach Ms.

West. (T. Tr. Vol. B, pg. 189-191, A-52-54).

However, again, on re-direct examination Ms. West provided

favorable testimony for the defense in which she continued to deny the oral

out-of-court statement to Mr. Horsey that Appellant had shot the victim. (T.

Tr. Vol. B, pg 191, 192, A-54-55).

At this point, trial counsel should have requested the trial court to

declare a mistrial due to the jury being over exposed to the improper and

unsubstantiated 3507 incriminating statements by Mr. Horsey which Ms.

West denies ever making to him. Instead, trial counsel recalled Ms. West

back to the witness stand the next day for re-cross examination at which time

Ms. West testified differently and now admitted to telling Mr. Horsey that

Appellant had shot the victim. (T. Tr. Vol. D, pg. 15-16, A-57-58).

Ms. West alleged prior out-of-court statement to Mr. Horsey was

corroborated by Ms. West on re-cross examination by Appellant's own trial

counsel (A 57-58) which satisfied the "consistent or inconsistent" elements

of § 3507, however, the trial court did not admit Ms. West's prior statement

under § 3507 because the proponent party seeking to introduce the allege

30.

evidence was the prosecution, not the defense. For this reason, the trial court (who also participated in this illegal conduct) admitted Ms. West coerced out-of-court prior statement under D.R.E. 801 (d)(1)(A) and D.R.E. 613 (c) and (d) for impeachment purpose only to be weighed against the credibility of both Ms. West and Mr. Horsey. (See trial court's jury instruction. T. Tr. Vol. D, pg. 11 thru 14 (A-149 to A-152).

Although Ms. West's coerced out-of-court statement was admitted under Rule 801 and 613, it is still the product of § 3507 and the requirement that it be voluntary is still governed by § 3507(a) (e.g. it must be voluntary consistent or voluntary inconsistent).

This gross misconduct by the trial court, the prosecution and Appellant's counsel violated Appellant's 5th Amendment Right against self-incrimination prohibiting a defendant from offering evidence against him or her self, because the State, the court and Appellant's counsel intentionally elicit or forced Ms. West to corroborate Mr. Horsey's unsubstantiated allegations that Appellant had shot the victim also defy the principle of § 3507 that the prior statement must be voluntary and furthermore provided the otherwise impermissible prerequisite foundation for the prosecution's introduction of Ms. West 3507 statement through Mr. Horsey's testimony

31.

(who is the actual declarant of the incriminating statement).

The Delaware Supreme Court expounded on this very problem in
Smith v. State, 669, A.2d 1 (Del. Supr. 1995). (If he crossed examined
Anderson about the statement before it had been offered as evidence, Smith
would be calling the jury's attention to a damning statement made by a
witness who testified in his favor on direct examination). Id. at 7-8.

This sort of misconduct by counsel "…must rank as a striking
instance of ineffective assistance of counsel." See Berryman v. Morton, 100
F.3d 1089, 1099-1100 (3rd Cir. 1996) (Berryman's attorney proceeded
relentlessly to elicit the irrelevant testimony that was so damaging to his' client").
Id. at 1100.

To add to the already prejudicial effect since the jury was instructed to
weigh the credibility of Ms. West and Mr. Horsey regarding whether or not
the out-of-court statement: "that Appellant shot the victim" was made, then
trial counsel's actions on re-cross examination impermissibly weighed in
favor of Mr. Horsey's credibility and since Ms. West confirmed the
statement the jury could construed such admission by Ms. West as
substantive evidence that she actually saw Appellant shoot the victim as the
prosecution contended she did on direct and re-direct examination and which

32.

is the essential element of the information in count one of the indictment

charging Appellant with First Degree intentional murder. (T. Tr. Vol. B, pg.

180 to 184 and 192 (A-45-49 and A-55-58).

Lastly, the trial court abused its discretion in admitting this evidence

because § 3507(a) requires that an out-of-court statement be voluntary. The

clear implications in the trial record show that Ms. West was threatened with

her prior drug conviction and probational sentence (subjected to being

revoked by the court), to recant her previous favorable testimony and admit

that she now had told Mr. Horsey that the Appellant shot the victim. Under

Delaware Law, a statement that was prompted by mental or physical

coercion or by duress or intimidation is not voluntary because it was not the

product of a free will. See, State v. Rooks, Del. Supr. 401 A.2d 943 (1979).

33.

## CONCLUSION

**WHEREFORE,** for the reasons set forth in the arguments above, this

court shall reverse the Superior Court October 5, 2005 decision denying

post-conviction relief and grant the Appellant a new trial.

LEO JOHN RAMUNNO, ESQUIRE
1205 N. KING STREET
WILMINGTON, DE 19801
302-654-0660
ATTORNEY FOR APPELLANT

34.

# Certificate of Service

I, _Ralph Reed_, hereby certify that I have served a true
and correct cop(ies) of the attached: _Petitioner's Reply To Respondents'_
_Answer To Petitioner's Habeas Petition_ upon the following

parties/person (s):

TO: _Elizabeth R. McFarlan_     TO: _____

_Deputy Attorney General_     _____

_Department of Justice_     _____

_820 N. French Street_     _____

_Wilmington, Delaware 19801_     _____


TO: _____     TO: _____

_____     _____

_____     _____

_____     _____

_____     _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE
19977.

On this _____ day of _____, 2006

_____